**BAKERSTOWN CONTAINER CORPORATION, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS; General Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 538; Burton W. Bloom; Sidney Mallet; and Malitovsky Cooperage, Inc.**

**No. 89–3054.**

United States Court of Appeals, Third Circuit.

Argued June 27, 1989.

Decided Sept. 5, 1989.

Stanley M. Stein, James A. Prozzi (Argued), Mark F. Haak, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pa., for appellant.

Ernest B. Orsatti (Argued), Jubelirer, Pass & Intrieri, P.C., Pittsburgh, Pa., for Appellee General Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 538.

James A. McCall (Argued), International Broth. of Teamsters, Washington, D.C., Sandra Kushner, Rothman, Gordon, Foreman & Grodine, P.A., Pittsburgh, Pa., for Appellee International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff Bakerstown Container Corporation ("Bakerstown") appeals from the order of the district court granting motions for directed verdicts in favor of defendants International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers ("International Teamsters") and General Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 538 ("Local 538"). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I. FACTS

Bakerstown is a Pennsylvania corporation specializing in the reconditioning, remanufacturing, and recycling of steel drums. Local 538 is the local collective bargaining agent for the employees of Bak-

erstown and is affiliated with International Teamsters, a national labor organization; Burton W. Bloom was, at all times relevant, president of Local 538.

In September 1979, Local 538 and Bakerstown began labor contract negotiations, but no agreement was reached before the contract expired in November 1979. At that point, the Bakerstown Local 538 employees went on strike.

During the strike, Sidney Mallet, president of Malitovsky Cooperage, Bakerstown's only competitor in the area, paid money to Bloom. Some of the money received by Bloom from Mallet was distributed to the striking employees; other payments from Mallet to Bloom were then deposited into Local 538's general fund checking account. The strike ended in March 1980.

In February 1985, Bloom was convicted of willfully and knowingly receiving money from Mallet, which money was given by Mallet with the intention of influencing the actions of Bloom as president of Local 538, in violation of § 302(b)(1) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(b)(1).

Bakerstown then brought this action against Bloom, Local 538, International Teamsters, Malitovsky Cooperage, and Mallet, claiming that it suffered economic damages as a result of the defendants' participation in activities that caused or prolonged a labor strike. Bakerstown alleged that the payment of money by Mallet and the receipt of such money by Bloom gave rise to five separate claims against all of the defendants under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186; 18 U.S.C. § 1962; 15 U.S.C. §§ 1, 2; and interference with contractual relations, a tort under Pennsylvania law. On appeal, however, Bakerstown presses only the § 302 claim.

The claims against Malitovsky Cooperage and its president, Sidney Mallet, were dismissed with the consent of all parties. The case was then tried before a jury in January 1989; at the close of Bakerstown's case, the district court granted motions for directed verdicts in favor of Local 538 and International Teamsters on all counts. As to the § 302 claim, the district court specifically adopted the holding of *American Commercial Barge Lines Co. v. Seafarers International Union*, 730 F.2d 327, 332 (5th Cir.1984), that § 302(e) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(e), provides no private cause of action for damages resulting from violations of § 302. The district court then determined that the clear proof standard of § 6 of the Norris–LaGuardia Act was applicable to the remaining claims. It concluded that no evidence was introduced that amounted to clear proof of responsibility for or ratification of Bloom's actions on the part of International Teamsters or Local 538.

As to Bloom, the jury returned a special verdict in Bakerstown's favor on the issue of whether Bloom's conduct in violation of the labor laws was a substantial factor in causing Bakerstown's harm. Thereafter, an agreement was reached between Bakerstown and Bloom in which all counts except the § 302 claim were to be decided in favor of Bakerstown in the district court.

## II. DISCUSSION

On appeal, Bakerstown challenges the directed verdicts entered in favor of defendants Local 538 and International Teamsters on the § 302 claim. Our review of a directed verdict is plenary. *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir.1987).

Bakerstown argues that the district court erred in concluding that § 302(e) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(e), does not provide for a private cause of action for damages for violations of the section. It contends that International Teamsters and its affiliate Local 538 violated § 302 through the actions of Bloom, as president of Local 538, in which Bloom received money from a competing employer in violation of § 302(b)(1).

Section 302 prohibits payments by employers to union officials, employee representatives, or labor organizations, as well as the receipt of such payments by any

persons, with certain limited exceptions listed in § 302(c). 29 U.S.C. § 186. Section 302(d) provides criminal sanctions for violations of § 302. 29 U.S.C. § 186(d). Section 302(e) states that "the district courts ... shall have jurisdiction ... to restrain violations of [§ 302]." 29 U.S.C. § 186(e).

Bakerstown acknowledges that courts of appeals for several circuits have concluded that § 302 provides no private cause of action for damages resulting from violations of § 302. *See American Commercial Barge Lines Co. v. Seafarers Int'l Union*, 730 F.2d 327, 332 (5th Cir.1984); *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir.1983); *McCaffrey v. Rex Motor Transp., Inc.*, 672 F.2d 246, 250 (1st Cir. 1982); *Souza v. Trustees of W. Conference of Teamsters Pension Trust*, 663 F.2d 942, 945 (9th Cir.1981); *Central States, Southeast & Southwest Pension Fund v. Admiral Merchants Motor Freight, Inc.*, 511 F.Supp. 38, 46–47 (D.Minn.1980), *aff'd*, 642 F.2d 1122 (8th Cir.1981). In *American Commercial Barge Lines*, the Fifth Circuit concluded that the language "restrain violations" did not encompass private causes of action for damages. The Sixth Circuit, in *Sellers,* reached a similar conclusion: "restrain violations" authorizes injunctive relief only. The First Circuit, in *McCaffrey,* held that the language "restrain violations" did not provide the district court with jurisdiction to award damages. In *Souza,* the Ninth Circuit determined that the language "restrain violations" provides for injunctive relief and noted that nowhere was it shown that anything more than injunctive relief was intended.

Bakerstown suggests, however, that the Third Circuit recognizes a private cause of action for damages under § 302. Bakerstown directs our attention to *Nedd v. United Mine Workers,* 556 F.2d 190 (3d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct.

727, 54 L.Ed.2d 757 (1978). *Nedd* must be examined carefully to determine if Bakerstown's reliance upon it is justified.

The action underlying the appeal in *Nedd* began when an action was commenced by pensioned anthracite coal miners and the widows of such miners against the United Mine Workers of America. The plaintiffs alleged, *inter alia,* breaches of fiduciary duties implied from the requirements of § 302, specifically § 302(c)(5), which permits payments by an employer into a trust fund established for the sole and exclusive benefit of its employees where the employees and employers are equally represented in the administration of such fund. The district court had concluded that the § 302 claim would not support federal jurisdiction because future injunctive relief was not requested.

On appeal, plaintiffs challenged, *inter alia,* the district court's determination that it lacked jurisdiction under § 302(e) to consider the action for damages. Our court considered the language of § 302(e) and determined that such language was not an affirmative grant of jurisdiction but rather assumed jurisdiction to exist where allegations of structural violations of § 302(c)(5) were made. The question for the court in *Nedd* was not jurisdictional but whether a federal common law cause of action could be implied from the provisions of § 302(c)(5) and for what purposes. 556 F.2d at 203. The court analyzed § 302 under the test established by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 and concluded that the complaint stated a cause of action properly implied from § 302. 556 F.2d at 203–05.[1] The court specifically noted that it only considered whether federal law provides a derivative damage remedy for a structural deficiency claim. *Id.* at 206. Such a derivative dam-

---

1. The court of appeals determined that the fund beneficiaries were the class for whose especial benefit § 302(c)(5) was enacted; the court next concluded that there was a clear indication in § 302(e) that civil remedies would be recognized; the court then determined that the recognition of private enforcement was consistent with the legislative scheme of § 302 and the

Labor Management Relations Act; lastly the court concluded that the fund was an unique kind of trust arising from a collective bargaining agreement and was therefore a matter of federal concern. 556 F.2d at 204–05; *see Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

age remedy brought by trust beneficiaries against trustees is equitable. *Id.* at 207.

Bakerstown is seeking a legal, rather than equitable, remedy: damages for itself flowing from violations of § 302(b). The court's analysis in *Nedd* did not result in the recognition of a broad, unqualified private cause of action for damages but rather the "[r]ecognition of a derivative cause of action for the recovery of money for the trust" in an equitable proceeding by trust beneficiaries seeking equitable relief for § 302(c)(5) violations. 556 F.2d at 204–05.

We do not find any basis for extending the cause of action recognized in *Nedd* to cover the action for damages presented to us by Bakerstown. As noted by other courts of appeals that have considered the issue, and with whom we agree, § 302 does not allow for a private cause of action for damages to be implied. This court in *Nedd*, in its *Cort v. Ash* analysis of § 302, implied civil remedies to enforce the provisions of § 302. We conclude, however, that its holding encompasses only those civil remedies necessary to "restrain violations," which may, however, include damages incidental to equitable relief. *See Nedd,* 556 F.2d at 204 n. 28. Nothing in the statute or its legislative history suggests that Congress intended anything more.[2]

We need not reach the question of what standard should be applied to assess liability if a private cause of action for damages were to be implied.

We will affirm the order of the district court granting the motions for directed verdicts in favor of International Teamsters and Local 538.

---

2. Congressional intent is the key to the inquiry of whether an implied private cause of action exists under a statute. *See, e.g., Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–246, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979).