GRIFFITH COMPANY; J. W. Hicks Construction Co. and Security Paving Co., Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Local No. 12, International Union of Operating Engineers and Operating Engineers Health & Welfare Fund, et al., Intervenors.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION 12, Respondent,

Griffith Company et al., and Operating Engineers Health and Welfare Fund et al., Intervenors.

Nos. 79–7394, 80–7103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1981.

Decided Oct. 26, 1981.

John H. Stephens, Cox, Castle, & Nicholson, Los Angeles, Cal., for Griffith Co., etc.

John H. Ferguson, Washington, D. C., argued, for NLRB; Elliott Moore and John H. Ferguson, Washington, D. C., on brief for NLRB.

Wayne Jett, Los Angeles, Cal., for Operating Engineers Health & Welfare Fund.

Before CANBY and REINHARDT, Circuit Judges, and HILL,[*] District Judge.

CANBY, Circuit Judge:

This case returns for appellate review having been previously remanded to the Board for further consideration. 545 F.2d 1194 (9th Cir. 1976), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 125 (1977). The present petition raises several issues. The primary question presented is whether the construction industry's limited exemption from hot cargo agreements, § 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e), renders lawful a provision in a Master Labor Agreement which prohibits an employer from subcontracting work to any signatory subcontractor who is delinquent in required payments to a common employee fringe benefit trust. Secondary issues include: (1) whether these agreements can be enforced by economic coercion; (2) whether the union must reimburse the employers for any monies which were contributed pursuant to the contract provision; and (3) whether certain statements by the trust administrator and counsel for the fund to an employer constituted a threat by union agents to invoke the self-enforcement provision of the contract.

I

The relevant facts are recited in our previous decision 545 F.2d at 1195–96. They are summarized here for convenience. Griffith Company, J. W. Nicks Construction Company and Security Paving Company, Inc. (Griffith) are general contractors in Southern California. All are members of a construction industry trade association which negotiated a Master Labor Agreement (MLA) with Local 12 of the International Union of Operating Engineers. A large number of other contractors individually negotiated "short form" agreements with Local 12 which incorporated by reference most of the terms and conditions of the MLA.

The agreement establishes four employee benefit trusts pursuant to § 302(c) of the Labor Management Relations Act, 1947, 29 U.S.C. § 186(c)(5). Each trust is jointly administered by a Board of Trustees composed of members appointed in equal numbers by the employer groups and the union. The trust funds are managed by a hired administrator.

Contributions to each trust are pooled into one account. An employee's eligibility for benefits is not dependent on whether his employer has actually contributed to the trust. The employer's failure to contribute, however, decreases the total funds in the pool and thereby results in reduced benefits for all beneficiaries. As the size of the required trust payments has increased, so too has the number of employers who are delinquent in their payments. The union has employed various methods to combat the delinquency problem. The most recent

---

[*] The Honorable Irving L. Hill, United States District Judge, for the Central District of California, sitting by designation.

approach is manifest in paragraphs 15[1] and 16[2] of the MLA.

Firms which are delinquent in their contributions and are unable to reach a settlement with the trustees are placed on the fund's official delinquency list. Copies of this list are sent to the signatory contractors and the union. Paragraph 15 of the MLA provides that no employer shall contract any work to a delinquent subcontractor until the subcontractor has paid all delinquent amounts. Paragraph 16 provides that if an employer violates paragraph 15 by hiring a subcontractor then listed as delinquent, the employer is liable for all prior delinquency payments even if those payments were not incurred as a result of work done at the employer's worksite. If the subcontractor becomes delinquent after commencing work on the employer's project, the employer must terminate the subcontractor, and if the employer fails to do so, the employer becomes liable for all delinquencies incurred on the job by the subcontractor ten days after the subcontractor's name appears on the delinquency list. Paragraph 16 also permits the union to picket or strike to enforce these provisions.

In 1973, the trustees discovered that the Urban Pacific Construction Company, a firm which had signed a short form agreement with the union and was on the delinquency list, was doing work for Griffith. Griffith had notice of Urban Pacific's prior delinquencies at the time of contracting. The trust administrator, Mr. Majich, and his attorney informed the employer that if the delinquencies were not paid, the administrator would notify the union of its right to enforce paragraph 16 by economic action. Griffith refused to pay and the administrator notified the union.

Griffith then filed a complaint with the NLRB alleging that paragraphs 15 and 16 were an agreement to cease doing business with another employer in violation of § 8(e)[3] and that the statements by the trust officials were a threat to strike for secondary purposes in violation of § 8(b)(4)(ii)(B).[4]

1. Paragraph 15 provides in pertinent part:
The Trustees of the Trust Funds through their Administrator, shall furnish each Contractors Association and the Union, with a list of delinquent Contractors each month. The Contractor agrees that he will not subcontract any portion of his job to any Contractor whose name appears on the delinquent list until such Contractor has paid all delinquent monies to the various Trust Funds....

2. Paragraph 16 provides:
In the event the Contractor subcontracts to any such delinquent Subcontractor, in violation of the foregoing, the Contractor shall be liable to the Trustees for all accrued delinquencies of the Subcontractor and shall withhold sufficient funds from monies due or to become due such Subcontractor and shall pay the sums over to the Trust Funds. If a Subcontractor becomes delinquent after commencing work for the Contractor, the Contractor shall be liable for all delinquencies incurred on the job after ten (10) days following the date of the delinquency list on which the Subcontractor's name first appeared. The Contractor shall terminate the contract of the Subcontractor who fails to properly correct his delinquency.
(a) Where the Contractor fails or refuses to make payments required under the above provisions, the Union shall have the right to withhold services from any or all jobs of such Contractor.

3. § 8(e), 29 U.S.C. § 158(e) provides in pertinent part:
It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work....

4. § 8(b)(4)(ii)(B), 29 U.S.C. § 158(b)(4)(ii)(B) provides:
(b) It shall be an unfair labor practice for a labor organization or its agents—
(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

The Board held the agreement was a primary provision intended to preserve union standards or union employment and therefore rejected the complaint.

This court found the agreements were secondary and accordingly reversed. The court remanded the case to the Board with instructions that it determine whether the clause was rendered lawful by the construction industry's limited exemption from "hot cargo" agreements.[5] It further instructed the Board to consider whether, if the clauses were unlawful, the union was required to reimburse the employers for any monies which were contributed pursuant to the contract provisions and whether certain statements by the administrator and the trust counsel constituted a threat by union agents to invoke the self-enforcement provisions of the delinquency clause.

On remand, the Board held that the delinquency clause, with the exception of the self-help provision, was within the scope of the construction industry proviso and the payments made pursuant to that clause were therefore legal. The Board also concluded that the trust officials were not acting as agents of the union in making the questioned statements. We agree with the decision of the Board and enforce its order.

## II

In *Pacific Northwest v. NLRB*, 654 F.2d 1301 (9th Cir. 1981) this court, sitting en banc, held that a Master Labor Agreement containing a union signatory clause requiring an employer to subcontract only to subcontractors who employed members of a particular union was within the scope of the construction industry proviso. The court focused on the unique nature of the construction industry, where short-term hiring and the extensive use of subcontractors make it difficult to define the primary bargaining unit and serve to create a community of interests among all workers at the jobsite. The court rejected the position advocated here by Griffith that the 8(e) proviso was intended solely to prevent jobsite friction between union and non-union workers. Instead, it adopted the view that where a collective bargaining relationship exists, an agreement which serves the community of interests at the jobsite is permitted. At 1318–1322. See also, 105 Cong. Rec. 17900, II Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 [hereinafter Leg. Hist.] 1433, (Senator Kennedy).

We believe that paragraphs 15 and 16 of the MLA serve the community of interests at the jobsite and consequently fall within the proviso. Griffith would have us adopt the view that because the subject matter of the contract concerns delinquencies that may be unassociated with the general contractor's jobsite, the provisions are unrelated to the community of interests there. This argument takes entirely too restrictive a view of the construction industry proviso as interpreted by *Pacific Northwest*. When a general contractor engages a subcontractor who is delinquent in his trust fund payments, that subcontractor's employees may engage in a primary strike at the work site. Such a strike can cause exactly the type of dislocation at the jobsite that the construction industry proviso was intended to prevent. Moreover, because contributions to the pension system are pooled into one account, the delinquency of the subcontractor affects the welfare, through the pension benefits, of all employees at the jobsite. The provisions of the collective bargaining agreement under review here and their judicial enforcement

\* \* \* \* \* \*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (b) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; ...

5. See n.3, *supra*.

are well calculated to serve the communal interests at the jobsite. We accordingly agree with the Board that these interests are protected by the construction industry proviso.

## III

Paragraph 16 permits the unions to enforce the delinquency provisions by economic measures. The Board properly found that because the clauses were secondary they could not be enforced by self-help.

■ Although the 8(e) proviso exempts the construction industry from the prohibition against secondary boycott agreements, it does not exempt the industry from § 8(b)(4)(ii)(B), which forbids economic coercion to enforce such a boycott. The legislative history clearly indicates that agreements entered pursuant to § 8(e) were to be enforced judicially rather than by self-help.[6] Conference Committee Report H.R.Rep.No. 1147, 86th Cong., 1st Session 39, I Leg.Hist. 943; see also 105 Cong.Rec. 17,900, II Leg. Hist. 1433 (Senator Kennedy); 105 Cong. Rec. A8359, II Leg.Hist. 1830 (Senator Goldwater). This court has followed that view on numerous occasions. *See e. g. Pacific-Northwest*, at 1323–24; *Associated General Contractors, Inc. v. NLRB*, 514 F.2d 433, 438–39 (9th Cir. 1975); *Acco Construction Equipment, Inc. v. NLRB*, 511 F.2d 848 (9th Cir. 1975); *NLRB v. International Brotherhood of Electrical Workers*, 405 F.2d 159, 163–64 (9th Cir. 1968), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1969). *Accord: Donald Schriver, Inc. v. NLRB*, 635 F.2d 859, 886 (D.C. Cir.1980), *cert. denied*, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981); *Bricklayer's Local No. 2 v. NLRB*, 562 F.2d 775, 787–88 (D.C.Cir.1977); *NLRB v. Muskegon Bricklayers Union*, 378 F.2d 859 (6th Cir. 1967).

■ Griffith argues, however, that because the self-help clause is invalid, the entire provision should be voided. We disagree. In *NLRB v. International Brotherhood of Electrical Workers*, 405 F.2d at 162,

this court held that only that part of a contract that exceeds the limits of the construction industry proviso is negated. We implicitly reaffirmed this view in *Pacific-Northwest*, where we upheld a union signatory clause but invalidated provisions for its enforcement by self-help.

## IV

The Board concluded that neither the administrator nor his counsel was an agent of the union. The Board accordingly dismissed the contractor's claim that the union through its agents violated § 8(b)(4)(ii) by threatening to invoke the self-enforcement provisions of the MLA. The Board's decision is supported by substantial evidence.

Each trust was established pursuant to § 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). That section requires the fund trustees to serve as independent fiduciaries and act solely in the interests of the beneficiaries. See *Toensing v. Brown*, 528 F.2d 69 (9 Cir. 1975). To ensure the independence of the trust, § 302(c)(5) requires that the employers and employees be equally represented in the trust administration. Courts and the Board have held that action by the trustees will be attributed to the union under the following fact situations:

(1) Where provisions of a collective bargaining agreement remove the discretion to administer the funds solely for the benefit of the employees. *Local 80, Sheet Metal Workers* (Turner-Brooks Inc.) 161 NLRB 229, 234 (1966); or

(2) Where the trustee's actions which are in question were directed by union officials. *Jacob Transfers Inc.*, 227 NLRB 1231, 1232 (1977); or

(3) Where the trustee's acts which are in question are undertaken in their capacities as union officials rather than as trustees. *NLRB v. Construction & General Laborers Union*, 577 F.2d 16, 20 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

---

**6.** Indeed it appears that even Local 12 has conceded that the self-help provision is invalid.

The above list summarizes holdings thus far made and may not include all possible factual situations in which trustee action will be attributed to the union.

None of the three fact situations listed above is present in the instant case. There is nothing in the collective bargaining agreement which permits the trustees to act on behalf of the union. The trustees are required to administer the funds solely for the benefit of the employees and Paragraph 16 provides that the union alone has the right to strike in order to enforce the provision of the MLA. There is also no evidence that the communication of Mr. Majich (which the company characterizes as a threat of a strike) was directed by any union official. Moreover, Mr. Majich is an employee of the trust and is not a union official and he had no connection with the union.

There is nothing in the facts which would support a finding of agency. Contrary to the contractor's assertions, the administrator and his counsel cannot be viewed as union agents merely because they attempted to secure prompt payment of delinquencies. The officials, under a duty to maximize trust assets for the beneficiaries, sought to fulfill this obligation by means short of filing suit for breach of contract. Viewed in this light, the actions by the administrator and his counsel threatening to inform the union of its rights to strike were not done on behalf of the union but were undertaken to protect the interests of the beneficiaries.[7]

Because the unions did not engage in the forbidden self-help to compel the contractors to comply with their contractual obligations, we conclude that the payments by the contractors to the pension funds were not exacted by unlawful means and therefore are not subject to reimbursement. *Cf. Graphic Arts International Union Local 280 v. NLRB*, 596 F.2d 904 (9th Cir. 1979);

*Sheraton Kauai Corp. v. NLRB*, 429 F.2d 1352 (9th Cir. 1970) (reimbursement ordered where money received by illegal coercion).

## V

This Court's en banc decision in *Pacific-Northwest* held that the scope of the 8(e) proviso extends to contractual provisions which further the common interest of workers at the jobsite. The delinquency clauses at issue clearly fit within the proviso as there interpreted. Further, there is substantial evidence to support the Board's determination that the trust administrator and his counsel were not agents of the union and that the union, therefore, did not threaten to invoke the self-enforcement provisions of the contract. However, the self-enforcement provisions are invalid under § 8(b)(4)(ii)(B).

Accordingly, we enforce the Board's order in its entirety.

---

7. J. J. Haggerty Inc., 139 NLRB 633, 651–653, 654–55 (1962), *enforced in relevant part sub nom. International Union of Operating Engineers v. NLRB*, 321 F.2d 130, 137 (2d Cir. 1963) and *Local 80 Sheet Metal Workers* (Turner-

Brooks Inc.), 161 NLRB at 234, relied upon by the contractors are distinguishable. In both cases the trustees were not serving the interests of the trust beneficiaries but of the unions who appointed them.