Albert **GAINEY**, Donald Jones, Edwin Mezen, Eugene Young and Ronald Williamson, Plaintiffs,

v.

Arne **VEMO**, Bob Baley, Dan Sheffield, John Korsmo, Tom Paulsen, Omas Brown, Lynn Baneker, Wilbur Hayes, James Freeman, August Miller, William Smith and Edward Vandenheuval, Trustees of the Carpenters Trust of Western Washington, Defendants.

No. C83–1094D.

United States District Court, W.D. Washington.

Jan. 9, 1986.

---

F.G. Enslow, Griffin & Enslow, Tacoma, Wash., for plaintiffs.

Laura M. Murphy, Carney, Stephenson, Badley, Smith & Mueller, Seattle, Wash., for defendants.

## MEMORANDUM AND ORDER

DIMMICK, District Judge.

Plaintiffs, members of a carpenters' union, challenged the discretionary powers of trustees to refuse contributions to a private union benefit fund. Procedurally, the union moved for a permanent injunction under 29 U.S.C. § 1132(a)(3). Defendant trustees responded by moving for summary judgment. After hearing oral argument, the Court grants the trustees' motion for summary judgment.

### I.

### THE FACTS

No facts are disputed. The controversy began on October 6, 1981, when the plaintiffs, Carpenters Local 470 ("Carpenters") contracted with their employer, Modern Builders, Inc. The contracting parties varied the terms of the Association of General Contractors' ("AGC") standard labor contract, effective June 1, 1981, through May 31, 1983. In particular, the Carpenters and Modern Builders changed the subcontracting clause in the standard contract. Under the AGC contract, the employer was automatically liable if its subcontractor failed to make benefit fund contributions on behalf of carpenters working for the subcontractor. Under the Carpenters' modified contract, the employer would be liable only if it failed to notify the Carpenters of the use of subcontractors before the subcontractors began to work. This modification was a substantial issue in their negotiation process.

In January 1982, the Trustees of the Carpenters' Trusts of Western Washington ("Trustees") notified Modern Builders of their disapproval of the subcontracting clause. The Trustees informed Modern Builders that they would place funds received from them in an escrow account until Modern Builders executed an agreement to comply with the subcontracting clause in the AGC contract. The Trustees used the same compliance agreement that they have used for several years for employers outside of the AGC wishing to

make contributions to the Trusts. Modern Builders refused to sign the compliance agreement.

On April 20, 1982, the Trustees told Modern Builders that they would accept contributions and pay benefits only until June 1, 1982. Afterwards Modern Builders would be required to sign the compliance agreement and to maintain records of hours worked by subcontractors' employees, as required under the standard AGC agreement. Modern Builders refused.

On July 23, 1982, the Trustees notified Modern Builders that they would refund contributions. Modern Builders' checks were then returned.

## II.

### THE LAW

The Carpenters Trusts are Taft-Hartley trust funds governed by 29 U.S.C. §§ 141–187 and 29 U.S.C. §§ 1001–1381 (Employee Retirement Income Security Act, "ERISA"). Civil enforcement of ERISA and of the terms of individual trust fund plans is provided under 29 U.S.C. § 1132. The Carpenters sue under 29 U.S.C. § 1132(a)(3) which provides that a civil action may be brought by a participant or beneficiary of a trust to enjoin any act or practice which violates any provision of ERISA or the terms of a trust fund plan or to obtain other appropriate equitable relief. Section 1132 provides further that in any action under that section by a participant or beneficiary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party. 29 U.S.C. § 1132(g)(1). Trusts, such as the Carpenters Trusts, are to be administered according to trust fund agreements. Trustees have a duty to enforce the terms of their trust fund agreements regarding contributions solely for the benefit of the fund beneficiaries. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 336, 101 S.Ct. 2789, 2797, 69 L.Ed.2d 672, *reh'g denied, United Mineworkers v. NLRB*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 and *reh'g denied, NLRB v. Amax Coal Co.*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981). The Trustees have an unwavering duty of complete loyalty to the beneficiaries of the Trusts. *Id.*

Trustees have wide discretion in determining the best interests of Trust beneficiaries. *Tomlin v. Board of Trustees of Constr. Laborers Pension Trust*, 586 F.2d 148, 150–51 (9th Cir.1978) (summary judgment for trustees upheld; trustees decisions overturned only when made in bad faith, for lack of factual foundation, or unsupported by substantial evidence); *Toensing v. Brown*, 528 F.2d 69, 70–72 (9th Cir.1975) (trustees have a duty to exercise independent judgment in administering trust funds, and their acts are reviewable for abuse of discretion); *see also Elser v. I.A.M. Nat. Pension Fund*, 684 F.2d 648, 654 (9th Cir.1982), *cert. denied, I.A.M. Nat. Pension Fund. v. Elser*, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983), later proceeding *Elser v. I.A.M. Nat. Pension Fund*, 579 F.Supp. 1375 (C.D.Cal.1984) (trustees of pension plans have broad discretion in setting eligibility rules). The Ninth Circuit has emphasized that "[c]ourts are extremely reluctant to substitute their judgments for the judgments of the trustees, and will do so only if the actions of the trustees are not grounded on any reasonable basis." *Souza v. Trustees of Western Conference of Teamsters Pension Fund*, 663 F.2d 942, 946 (9th Cir.1981), *quoting Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 542 (9th Cir.1980), on remand, 582 F.Supp. 1310 (C.D.Cal.1984), *aff'd*, 774 F.2d 1401 (9th Cir.1985). In particular, the *Souza* court refused to second-guess the good faith discretionary judgment of trustees where that judgment was based on technical economic guidelines provided by advisors. *Id.* at 947. *See also Griffith Co. v. National Labor Relations Board*, 660 F.2d 406, 411 (9th Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1982) (payments of contractors to pension funds were not extracted by unlawful means where trustees enforced delinquency clause involving subcon-

tractor contributions in master labor agreement against contractors).

The Second Circuit has recently affirmed a summary judgment for trustees of a union pension trust on facts similar to those in the present case. *Building Trades Employers Assoc. v. New York State Teamsters Conference Pension and Retirement Fund*, 761 F.2d 115 (2d Cir.1985), *affirming Morse v. New York State Teamsters Conference Pension and Retirement Fund*, 580 F.Supp. 180 (W.D.N.Y.1983). The Trustees in *Morse* had required employers to sign a participation agreement before they would accept employer contributions to the trust fund. 580 F.Supp. at 188. The trustees were unable to administer an actuarily sound pension fund unless the employers agreed to contribute according to uniform procedures. *Id.* The plaintiff's employer modified the terms of the trust participation agreement. Consequently, the trustees refused to accept the employer's tender of contributions. The district court held that as a matter of law the trustees could require execution of a uniform participation agreement. The Second Circuit upheld the district court's judgment, emphasizing the broad discretionary powers of trustees and their exclusive authority to manage and control their fund.

### III.

### ANALYSIS

■ The Trustees in the present case are bound by the terms of their Trust Agreement. The Trustees are given express power in the Trust Agreement to construe all of its provisions, necessarily including contribution provisions. The Trustees' constructions are binding on individual employers, such as Modern Builders, if they subscribe to the Trusts.

The terms governing contributions create discretionary power in the Trustees to approve non-standard collective bargaining agreements, such as the Carpenters' labor contract. The Trustees thus have the authority to refuse Modern Builders' contributions. They also have a duty to do so if Modern Builders' participation might threaten the interest of Fund beneficiaries.

The Trustees have disapproved the Carpenters' contract because it would cost more to administer than the standard AGC contract. The Carpenters' subcontracting clause might also result in preferential treatment of Modern Builders at the expense of members of the AGC and of all Fund beneficiaries. The Trustees would, for example, have to get records from each of Modern Builders' subcontractors rather than from Modern Builders alone. As the *Morse* court observed, if an employer such as Modern Builders could force its individualized labor contract on the Trustees, then such an employer would to some degree control Fund administration and, ultimately, control distribution of its assets. 580 F.Supp. at 187.

The Trust Agreement additionally provides that the Trustees may require any individual employer to furnish on demand any information reasonably necessary for the purposes of Fund administration. By affidavit, the Trust administrator averred that when time records have not been maintained in the past by the employer, the Trusts have had difficulty getting records from the subcontractors, who—not being signatories to the Trust Agreement—were not bound by its recordkeeping requirements. The Trust administrator further averred that all other employers contributing to the Trusts were required by the Trust Agreement to maintain daily records of subcontractors' job site hours. He explained that uniform recordkeeping procedures are necessary to avoid discriminatory treatment of employers and to control costs of administration, including costs of additional legal advice needed for anomalous collecting procedures.

Finally, the Trustees have submitted evidence that the subcontracting clause is required to prevent a general contractor from circumventing its obligation to pay wages

and fringe benefits by subcontracting all its work or substantial parts of it. The Carpenters submitted no evidence challenging the factual basis of any of the Trustees' decisions.

Instead of challenging the Trustees' factual assertions, the Carpenters point to the political effects of the Trustees' decisions. The Carpenters argue that the Trustees' disapproval of the Carpenters' freely negotiated contract amounts to an interference with the collective bargaining process. The Carpenters argue that the fringe benefit package provided by the Carpenters Trusts is a substantial cost factor in their negotiations. These arguments are undercut, however, by the plaintiffs' own admissions, first, that Modern Builders could obtain coverage for its employees from other sources and, second, that the Carpenters could petition the parties to the Trust Agreement to amend the Trustees' authority.

## IV.

## CONCLUSION

The Trustees' motion for summary judgment is granted. Their requirement that non-member employers comply with the standard subcontracting clause is neither arbitrary nor capricious. The Carpenters have consequently failed to establish a right to relief. Their motion for a permanent injunction is thus denied. In any event, where a dispute is moot, as both parties admitted this one to be, a permanent injunction does not issue. *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 588–89, 81 S.Ct. 1135, 1138–39, 6 L.Ed.2d 551 (1961), *reh'g denied*, 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961).

The Trustees' motion for summary judgment is GRANTED. The Carpenters' motion for permanent injunction is DENIED. The only matter left for consideration is the Trustees' request for attorney's fees and costs under 29 U.S.C. § 1132(g)(1).