**CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND and Central Pennsylvania Teamsters Health & Welfare Fund**

v.

**W & L SALES, INC.**

**Civ. A. No. 90–4620.**

United States District Court, E.D. Pennsylvania.

Aug. 6, 1991.

Charles R. Osinski, Allentown, Pa., Jack G. Mancuso, Reading, Pa., for plaintiffs.

David F. O'Leary, Shawn D. Lochinger, Harrisburg, Pa., for defendant.

## MEMORANDUM DECISION AND ORDER

VAN ANTWERPEN, District Judge.

On March 18, 1991, a non-jury trial was held in the captioned matter. No jury demand was made and the case was tried without a jury. Plaintiffs Central Pennsylvania Teamsters Pension Fund and Central Pennsylvania Teamsters Health and Welfare Fund brought this action against defendant W & L Sales, Inc., alleging a failure to make $2,680.16 in pension contributions in violation of the following Federal statutes: sections 502 and 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1132 and 1145 (West 1985 & Supp.1991) (hereafter referred to as

"ERISA"); and section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (West 1978).[1] At issue in this case is whether the defendant is liable for pension benefit contributions[2] for what the defendant calls casual employees. After reviewing the testimony[3] and exhibits presented at trial, we make the following findings of fact and state the following conclusions of law, pursuant to Fed. R.Civ.P. 52(a).

FINDINGS OF FACT

1. Plaintiff Central Pennsylvania Teamsters Pension Fund (hereafter referred to as "the Pension Fund") is a union pension trust fund established and maintained pursuant to the provisions of section 302(c)(5) of the Labor Management Relations Act, as amended, 29 U.S.C.A. § 186(c)(5) and is a "multiemployer" and an "employee benefit plan" within the meaning of sections 3(37), (2) and (3) of ERISA, 29 U.S.C.A. § 1002(37), (2) and (3). The Pension Fund offices are located at 1055 Spring Street, Wyomissing, Pennsylvania.

2. The Pension Fund was formed in 1954 and is comprised of 356 employers and 967 accounts. It has 22,000 active participants, including 8,000 retirees, and a present value of $860,000,000.00. It is a combination of a defined benefit and a defined contribution plan. The Pension Fund is not part of a union; it is a distinct entity, operated through a Master Trust Agreement, which dates from 1983, and a number of Individual Retirement Plan Agreements.

3. Plaintiff Central Pennsylvania Teamsters Health and Welfare Fund (hereafter referred to as "the Health and Welfare Fund") is a trust fund established and maintained pursuant to the provisions of section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C.A. § 186(c)(5) and is a "multiemployer plan" and an "employee benefit plan" within the meaning of sections 3(37), (1) and (3) of ERISA, 29 U.S.C.A. § 1002(37), (1) and (3). The Health and Welfare Fund officers are located at the same location as the Pension Fund.

4. Defendant W & L Sales Co., Inc. (hereafter referred to as "the defendant") is an employer in an industry affecting commerce within the meaning of sections 3(5), (11) and (12) of ERISA, 29 U.S.C.A. § 1002(5), (11) and (12), and sections 2(2), (6) and (7) of the National Labor Relations Act, 29 U.S.C.A. § 152(2), (6) and (7). It has a business address of 4050 Industrial Park, Harrisburg, Pennsylvania.

5. Although it is not a party, the union directly involved in this case is the Teamsters Local Union No. 776, A/W International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

6. The defendant is a contributing employer in the Pension Fund and has signed both the 1983 Master Trust Agreement and an Individual Plan Agreement. In the Employer Joinder Section of the 1983 Trust Agreement, the defendant and other employers agreed that:

The undersigned Employer [defendant W & L Sales, Inc.] does hereby agree this 16th day of July, 1986, to be bound by all the terms and provisions of the foregoing Trust Agreement, and as the same may be amended or modified from time to time, and does hereby designate and appoint the CENTRAL PENNSYLVANIA MOTOR CARRIERS CONFERENCE, INC., or its successors, as its agent to enter into any amendments or

---

1. Plaintiffs have also made a state law claim under the Pennsylvania Wage Payment and Collection Law. However, this claim is preempted by ERISA, under 29 U.S.C.A. § 1144(a) (West 1985). *McMahon v. McDowell,* 794 F.2d 100 (3d Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). We, therefore, will not address the merits of this claim in this decision. Furthermore, the plaintiffs have not argued this claim in their brief and we deem it waived.

2. In their complaint, at paragraph 29, the plaintiffs also allege $6,145.00 in delinquent Health and Welfare Fund contributions. At trial, no evidence was introduced in support of this claim. Consequently, we will not address this issue in this decision, and deem this claim waived.

3. The parties stipulated at trial that the depositions taken in this matter would be part of the evidence in this case.

modifications to the foregoing Trust Agreement except any amendment which would increase the obligation of the Employer to contribute money (exclusive of interest and penalties for late payments) to the Central Pennsylvania Teamsters Pension Fund (and as to the latter, the Employer's obligation shall be limited to the amount set forth in its Collective Bargaining Agreement, or as required by law, and not otherwise), and such amendments shall be binding upon the employer, just as though it were one of the original parties of such Trust Agreement or amendment.

(Plaintiffs' Exhibit 5).

7. Article VIII of the 1983 Trust Agreement concerns "Admission of Employers and Local Unions." Section 8.1 of this article provides, in relevant part:

*Joinder of Other Employers.* In the event that any other Employer desires to join the Trust and Fund and make contributions to the Fund for the benefit of the Employees of the Employer, the Employer shall, if the Trustees elect to allow the Employer to join the Trust and Fund, execute the within Trust Agreement and an appropriate Benefit Level, or copies thereof, together with a proper joinder agreement. If the said Employer, with the consent of the Trustees, executes such documentation for the purpose of joining the Trust and Fund, the Employer and all Participants, their Dependents and Beneficiaries receiving Benefit Coverage through the Employer, shall be bound by the terms and provisions of the Fund, Pension Fund Agreement and Trust Agreement, in effect at the time of the joinder and as said documents may be amended from time to time.

8. Section 1.1.F of the 1983 Trust Agreement reads: *"Contribution.* Payments made or required to be made to the Fund by a member Employer pursuant to the terms of a Collective Bargaining Agreement or other written document." Section 4.1 *"Employer Contributions"* reads at subsections A and B:

A. Each Employer shall make prompt contributions or payments to the Fund in such amount and pursuant to the terms and conditions set forth in that Benefit level which relates to the Employer and the rules and regulations of the Trustees which are applicable thereto, all pursuant to the Collective Bargaining Agreement in effect from time to time between the Employer or his bargaining representative and the Local Union. The Employer agrees that such contributions shall constitute an absolute obligation to the Fund and that such obligation shall not be subject to any set-off of counterclaim which the Employer may have with respect to the Union, Local Union or an Employee.

B. Contributions shall be made for each eligible employee of the Employer represented by the Union.

9. Section 5.2 of the 1983 Trust Agreement reads, in relevant part:

*Conduct of Trust Business.* The Trustees shall generally supervise the operation of the Trust and the Fund and shall conduct the business activities of the Fund in accordance with the terms of this Trust Agreement and pursuant to the provisions of ERISA and other applicable law....

10. Section 5.7.b. of the 1983 Trust Agreement reads, in relevant part:

*Funding Policy.* The Trustees, in consultation with their professional advisors, shall determine, establish and carry out a funding policy and method consistent with the objectives of the Trust Fund and the Fund Agreement and the requirements of ERISA....

11. Section 5.12 of the 1983 Trust Agreement reads, in relevant part:

*By–Laws—Rules and Regulations.* The Trustees are hereby authorized to adopt by-laws and to promulgate rules and regulations which the Trustees deem necessary or desirable for the purpose of facilitating the proper administration of the Trust and/or Fund; provided, however, that the same shall not be prohibited by the terms of the within Trust Agreement, ERISA or other applicable law. All by-laws, rules and regulations adopted by the Trustees shall be binding

upon the parties hereto, Participants, their Dependents and Beneficiaries . . .

12. Section 5.19 of the 1983 Trust Agreement reads:

*Construction and Determination by Trustees.* Subject to the stated purposes of the Fund and the provisions of this Trust Agreement, the Trustees shall have full and exclusive authority to determine all issues pertaining to Benefit Coverage and Eligibility therefor and to interpret all provisions of the within Trust Agreement, the Benefit Levels comprising the Fund and the by-laws and regulations issued with respect thereto. Any determination and/or interpretation adopted by the Trustees shall be binding upon all parties and shall not be subject to the grievance or arbitration procedures established in any Collective Bargaining Agreements between and among Employers, Employees, the Conference, the Union and/or Local Unions.

13. The defendant signed one of the Pension Fund's Retirement Plan Agreements called the *Central Pennsylvania Teamsters Pension Fund Consolidated Fund Agreement—Benefit Level G Part II—Retirement Income Plan* (Plaintiffs' Exh. 4) (hereafter "CFA—Retirement Income Plan"). Section 12.5 of the CFA—Retirement Income Plan concerns the "General Powers and Duties of the Trustees." Under subsection U, the trustees have the power "[t]o construe and interpret this Retirement Income Plan Benefit Level and other documents related hereto." Subsection Z allows the trustees to "exercise such authority and responsibility as is deemed appropriate in order to comply with ERISA and other governmental laws and regulations."

14. The CFA—Retirement Income Plan contains section 3.1, which concerns "Conditions of Eligibility". Section 3.1(A) of the CFA—Retirement Income Plan defines "Member Employees" as "those Employees as defined as such under Section 1.1.HH hereof." It continues: "Only those Employees who are Member Employees as herein defined may be Participants in this Retirement Income Plan Benefit Level of

the Fund." Section 1.1.HH of the CFA—Retirement Income Plan reads, in pertinent part:

H.H. **Member Employee.** An Employee:

1. of a member Employer which has a current Collective Bargaining Agreement with a Union, which agreement requires Contributions to the Fund for such Employee.

. . . .

15. Section 1.1.T of the CFA—Retirement Income Plan defines "Employee" in relevant part thus: "1. A person working for an Employer, as defined herein, which Employer is required to make Contributions to the Fund pursuant to a Collective Bargaining Agreement with a Union."

16. Section 1.1.KK of the CFA—Retirement Income Plan defines "Participant" thus: "Any Member Employee who participates in this Retirement Income Plan Benefit Level per Section 3.2 hereof and who has not, for any reason, become ineligible to participate hereunder."

17. Section 3.2 of the CFA—Retirement Income Plan concerns "Procedure for Participation" and reads:

In order to become a participant hereunder, an Employee must meet the requirements referred to under Section 3.1.B hereof. The Member Employer shall complete the reporting requirements of the Fund on behalf of such Employee. The Employee shall automatically be bound by the terms and conditions of this Retirement Income Benefit Level as well as the provisions of the Consolidated Fund Agreement, the Trust Agreement and all Amendments thereto.

18. Section 3.1(B) of the CFA—Retirement Income Plan reads:

Each Employee who is employed by a Member Employer on the Effective Date of this Retirement Income Plan Benefit Level or each Employee who commences employment with a Member Employer after the Effective Date of this Retirement Income Plan Benefit Level shall be eligible [sic] to participate in this Retirement Income Plan Benefit Level after such Employee has performed one (1)

Hour of Service as herein defined and is otherwise eligible to participate in accordance with the Collective Bargaining Agreement governing his employment. Such Collective Bargaining Agreement, in order to meet the requirements of the Fund, shall: (i) require no minimum period of Eligibility; and (ii) require no minimum age for either Participation or Vesting purposes; and (iii) require the Member Employer to make appropriate Contributions to the Fund in accordance with the Contribution Rate Schedule attached hereto and the Rules and Regulations of the Fund governing Contributions.

19. Section 3.3 of the CFA—Retirement Income Plan states:

Section 3.3. *Determination of Eligibility.* The Fund shall determine the eligibility of each Employee for participation in this Retirement Income Plan Benefit Level based upon information furnished by the member Employer and Employee. Such determination shall be conclusive and binding upon all parties as long as the same is made in accordance with this Retirement Income Plan Benefit Level, the provisions of the Consolidated Fund Agreement, the Trust Agreement and ERISA.

20. Section 1.1.II of the CFA—Retirement Income Plan reads: **"Member Employer.** An Employer which, by virtue of its execution of the Plan and Trust and Collective Bargaining Agreement, has become contractually bound to make Contributions to the Fund."

21. Section 1.1.V of the CFA—Retirement Income Plan defines "Employer" in relevant part thus: "1. An entity represented in collective bargaining by the Conference which is bound by the Collective Bargaining Agreement between the Conference and a Union, which Collective Bargaining Agreement provides for payment of Contributions to the Fund. 2. An entity, not represented in collective bargaining by the Conference, but which has entered into a Collective Bargaining Agreement with a Union, which Collective Bargaining Agreement provides for payment of Contributions to the Fund...."

22. The CFA—Retirement Income Plan contains a definition of "Collective Bargaining Agreement" at Section 1.1.H which reads:

An Agreement between a member Employer of the Fund and a Union representing Employees governing the conditions of work, and various forms of compensation, including Contributions to the Fund for such Employees. Such phrase shall be deemed to include, in matters relating to Member Employees as defined in Section 1.1.HH.2. and 3. hereof, those other written agreements governing Contributions to the Fund on behalf of such Employees.

23. Section 1.1.K of the CFA—Retirement Income Plan reads: **"Contribution.** A payment made or required to be made by a member Employer to the Trust pursuant to the terms of a Collective Bargaining Agreement."

24. Section 4.3 of the CFA—Retirement Income Plan concerns "Basis of Contributions" and reads:

A Member Employer shall be responsible to make Contributions pursuant to the terms of its Collective Bargaining Agreement and the within Agreement, the Consolidated Fund Agreement, the Trust Agreement and ERISA for Participants employed by the Member Employer. Member Employers shall not be responsible for the Contributions or nonpayment of Contributions of other Member Employers.

25. Attached to the CFA—Retirement Income Plan is a "Schedule of Minimum Contributions Benefit Levels A Through J for January 1, 1987 and Thereafter." The section captioned "Monthly Plans" reads:

The Member Employer is responsible to contribute the full monthly Contribution for each Member Employee if such Member Employee is credited with the number of Hours of Service during such month (not to exceed 86 Hours of Service) which the respective Collective Bargaining Agreement specifies as being the minimum number of Hours of Service which the member Employee must be credited with during the month in order

to require the member Employer to make a Contribution on behalf of the member Employee.

26. The "Schedule of Minimum Contributions Benefit Levels A Through J for January 1, 1987 and Thereafter" was determined by actuaries and relates to the benefit that the employees would be entitled to upon their retirement based upon the annual service records or the 1,000–hour years that each employee has. (Tr. 3/18/91, Kleinfelter at 36).

27. The "13 Week—86 Hour Rule" of the Schedule of Minimum Contributions in Finding of Fact 25 governs employer contributions. (Tr. 3/18/91, Kleinfelter at 8–9). In elementary terms, the rule means that an employee is entitled to have his employer make a contribution to the Pension Fund after he or she has worked eighty-six hours in one month and after such employee has completed a thirteen-week probationary period. (*Id.* at 18–19). Thereafter, contributions will be made for that employee as long as he or she works at least eighty-six hours every month.

28. John R. Kleinfelter is the Administrator of the Pension Fund. Prior to holding that position, he occupied the position of trustee. As Administrator, he monitors employer contributions and begins a collection process when such contributions are delinquent. (Tr. 3/18/91, Kleinfelter at 7–8).

29. Employers who contribute to the Pension Fund are audited by the Pension Fund on a rotating basis. When the defendant was being audited, a shortage was found for the years 1987 and 1988. The defendant objected to the application of the "86 Hour Rule" to its so-called "casual employees". The defendant claimed that these "casual employees" had executed a "casual waiver", *i.e.*, a document whereby the "casual employees" waive their rights under the Plan. The position of the Pension Fund is that such waivers are not valid and it refuses to recognize them. (Tr. 3/18/91, Kleinfelter at 14, 19).

30. According to the business agent of Local Union No. 776 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, the union that signed a collective bargaining agreement with the defendant, "casual employees" are individuals who perform bargaining unit work, but who are full-time students or have full-time jobs elsewhere. Basically, they work through the summer and over the Christmas season, but the employer is able to use them at any time during the year. They do not join the union, no matter how long they have worked as "casual employees". (Deaner Deposition of October 23, 1990, at 6–7).

31. Defendant's Exhibit 1 is a Collective Bargaining Agreement between the defendant and Local Union No. 776. It is entitled: *Agreement between W & L Sales Co., Inc. and Teamsters Local Union No. 776 a/w/ International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.* (Hereafter "Collective Bargaining Agreement, 1985–1988"). The effective date of this document is June 9, 1985—June 9, 1988 and this was the collective bargaining agreement in effect at the time of the delinquent Pension Fund contributions.

32. Article XVIII, "Pension Fund", of the Collective Bargaining Agreement of 1985–1988 reads, at section (1)(a): "The Employer hereby agrees to contribute to 'Plan F, Second Step' of the Central Pennsylvania Teamsters Pension Fund ... [various monthly contributions] for each eligible employee on its payroll who is covered by this Agreement *in accordance with the terms of the Trust Agreement and Central Pennsylvania Teamsters Pension Plan executed by the employer herein.* (Emphasis supplied). The "Pension Fund" Article also reads at section (2)(a): "Employee Eligibility—New Employees. (a) A new employee shall be eligible for contributions to the Pension Fund after he has been on the payroll of the Employer for thirteen (13) weeks *or more.*" Sections 3(a) and (b) read: "Employer Contributions—Regular Employees. (a) A regular employee is an employee who has been employed and on the payroll of the Employer for more than thirteen (13) weeks. (b) The specified contribution shall be paid for each regular

employee who is assigned and works eighty-six (86) hours or more during a calendar month."

33. Article VI of the Collective Bargaining Agreement of 1985–1988 between the defendant and the union, however, deals with "Casual Employees". It reads, in pertinent part:

A category of employees, namely casual employees, shall be recognized and consist of persons who have other full-time employment and/or full-time students. Casual employees may perform work for the Employer. As to such persons, there shall be no requirement that the Employer pay any sums into the Health and Welfare and Pension funds, nor shall the Employer be required to provide any holidays or vacation pay for these persons. Casuals shall not be entitled to any seniority rights, and shall sign a standard Union Waiver Form (a copy of this to be supplied to the Employer). Casuals may be released by the Employer at any time and for no stated reason.

34. Defendant's Exhibit 4 is the latest Collective Bargaining Agreement between the defendant and the union. It is effective April 1, 1988 through June 9, 1991. This agreement contains an Article XVIII, "Pension Fund", section 2.a. and section 3(a) and (b), which is identical to that set forth in the Findings of Fact above. Article VI, "Casual Employees" states that no contributions shall be due for casual employees. This Article is also virtually identical to that found in the Collective Bargaining Agreement of 1985–1988 and reads, in pertinent part: "As to such persons [casual employees], there shall be no requirement that the Employer pay any sums into the Health and Welfare and pension funds, nor shall the Employer be required to provide any holidays or vacation pay for those persons...."

35. In his capacity as Administrator, Mr. Kleinfelter reviews collective bargaining agreements. (Tr. 3/18/91, Kleinfelter at 50). He reviews only the pension sections of each collective bargaining agreement submitted for the Pension Fund's inspection. (*Id.* at 14). He confines his attention to this part of collective bargaining agreements because of the vast number of such documents. It would be very costly to review all provisions of each document. If the pension section of a collective bargaining agreement is found to be improper, the employer is notified to correct it and, until such correction is made, the employer is not regarded as a "participating employer". (*Id.* at 15). The same notification would go out to an employer who had failed to submit a signed Trust Agreement. (*Id.* at 51). In reviewing the defendant's collective bargaining agreements, Mr. Kleinfelter discovered only appropriate pension language. Since Mr. Kleinfelter reviewed only the pension section in the defendant's collective bargaining agreements, he was not aware at that time of the defendant's attempt to exclude the casual employees in another section of the documents.

36. Defendant's Exhibit 3 is *Restatement Agreement Declaration of Trust. Central Pennsylvania Teamsters Pension Fund* (effective August 1, 1990) (hereafter "New Trust Agreement—1990"). This is not the Trust Agreement in effect for the period for which contributions are sought in the case at bar. This new Trust Agreement *now* expressly requires the Trustees' approval of collective bargaining agreements.

37. Mr. Kleinfelter also serves as Administrator of the Health and Welfare Fund. The Health and Welfare Fund is a separate fund and does recognize casual waivers because it believes that it does not have the same obligations imposed upon it as the Pension Fund does. (Tr. 3/18/91, Kleinfelter at 34). If no employer contributions are made to the Health and Welfare Fund, no benefits are payable. This is not the interpretation of the plaintiffs as far as the Pension Fund is concerned. The plaintiffs believe that they are obliged to provide pension benefits for employees who work a thousand hours or more, whether or not the employer makes contributions. (*Id.*).

38. A letter, dated December 5, 1978, was sent to Harry A. Dower, Esq., then counsel to the Pension Fund, from J. Vernon Ballard, Deputy Administrator, Pension and Welfare Benefit Programs, U.S. Department of Labor, Labor–Management Services Administration. (Plaintiffs' Exh. 3). Mr. Dower had asked the Department of Labor whether "a multiemployer pension plan may provide that a participant shall accrue benefits only upon the payment of contributions by the employer required to make such contributions." (Plaintiffs' Exh. 3, at 1). At page 3 of the letter, the Department of Labor stated:

> With regard to the question of whether benefit accrual may be limited to hours for which contributions are received, sections 202, 203 and 204 of ERISA set forth the minimum standards for participation, vesting and benefit accrual. The Department is of the view that, at least for purposes of participation and vesting, credit may not be limited to service for which contributions are actually made. Where no distinction is made between credit for vesting and credit for accrual, all credit must be given solely on the basis of service performed for an employer sponsoring the plan, regardless whether that employer is required to contribute for such service or has made or defaulted on his required contributions. Accordingly, those provisions of the plan documents you submitted which limit employee entitlement by reference to the receipt of employer contributions are not, in our opinion, lawful under ERISA. (footnote omitted).

The letter stated that it would violate ERISA to limit employee entitlement to the receipt of employer contributions. The letter also stated that there was an obligation on the part of the Trust to collect delinquent contributions.

39. The parties have stipulated that the following sums would be due for the following employees, if the defendant is found to be liable:

a. Michael Adams—Hire date: September 14, 1987, as "casual" employee. Became a "regular" employee on May 16, 1988. Pension Fund claims a total of $886.72 for the months of December, 1987 and January through July, 1988;

b. Fred Burwell, III—Hire date: May 16, 1988 as a "casual" employee (and remained a "casual" employee throughout his term of employment). Pension Fund claims a total of $226.68 for the months of September and December of 1988;

c. Juan Donnell—Hire date: April 12, 1984 as a "casual" employee. Became a "regular" employee on March 1, 1988. Pension Fund claims a total of $433.36 for the months of October through December of 1987 and February of 1988;

d. Jay Hallet—Hire date: April 20, 1988 as a "casual" employee (and remained a "casual" employee throughout his term of employment). Pension Fund claims a total of $566.70 for the months of August through December of 1988;

e. Douglas Klinger—Hire date: May 23, 1987. Pension Fund claims a total of $453.36 for the months of May through August 1988. No casual waiver has been provided to the Fund by W & L Sales on this employee; and

f. Wilber Witsel—Hire date: March 1, 1988 as a "casual" employee. Became a "regular" employee on March 26, 1988. Pension Fund is claiming a total of $113.34 for the month of May, 1988.[4]

## DISCUSSION

Plaintiffs have brought suit to recover unpaid pension fund contributions for defendant's "casual employees". Plaintiffs argue that, as a signatory to the 1983 Trust Agreement and CFA—Retirement Income Plan, the defendant agreed to be bound to the terms and conditions of those documents. Those terms and conditions

---

4. In the Stipulation of Facts, there is an internal inconsistency. There is a reference to "seven employees", but only six are listed. An inquiry was made by the Court of plaintiffs' counsel and plaintiffs' counsel has assured the Court that the correct number was "six", since a decision had been made prior to the filing of the stipulation to drop another casual employee from the computation.

set forth the criteria for eligibility for participation in the pension fund. Employees who fulfill these criteria, viz., the "86 Hour Rule", are eligible under the plan and employers must make contributions for them. No distinction is made in these documents between "casual employees" and others. Therefore, the plaintiffs argue that the defendant must make pension contributions for those six "casual employees" listed in Finding of Fact 39.

Suit is brought under the "Employee Retirement Income Security Act" ("ERISA"),[5] specifically, 29 U.S.C.A. § 1132(a)(3) (West 1985 & Supp.1991)[6] and 29 U.S.C.A. § 1145 (West 1985).[7] The defendant contends that no such contributions are due because Article VI of the collective bargaining agreement between it and Local Union No. 776 exempts it from having to make any pension contributions on behalf of "casual employees". The defendant further contends that the many references to collective bargaining agreements in the 1983 Trust Agreement and the CFA—Retirement Income Plan allows the terms of the defendant's collective bargaining agreement to control employee eligibility for pension benefits. We believe that the defendant's position is both legally incorrect and unreasonable.

■ We begin by noting that ERISA sections 502 and 515 [29 U.S.C.A. § 1132 and 29 U.S.C.A. § 1145] "give a district court subject matter jurisdiction to hear an action brought by benefit plan trustees to enforce an employer's promise to make contributions. (Citations omitted)." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 312–313 (2d Cir.1990). "[T]he provisions of the trust agreement provide the framework with which a court should analyze an employer's obligation to a ... fund. *See Hinson v. NLRB*, 428 F.2d 133, 139 (8th Cir.1970)." *Indiana State Council of Roofers v. Adams Roofing*, 753 F.2d 561, 564 (7th Cir.1985). "Trusts, ..., are to be administered according to trust fund agreements. Trustees have a duty to enforce the terms of their trust fund agreements regarding contributions solely for the benefit of the fund beneficiaries. (Citations omitted)." *Gainey v. Vemo*, 627 F.Supp. 408, 410 (W.D.Wash.1986).

■ We have gone over the provisions of the 1983 Trust Fund Agreement and the intent is clear. The defendant agreed to be bound by the provisions of this Trust. As set forth in Finding of Fact 8, the defendant agreed to "make prompt contributions or payments to the Fund in such amount and pursuant to the terms and conditions set forth in that Benefit level ... and the Rules and Regulations of the Trustees." Other sections of the 1983 Trust Agreement underscore the power of the Trustees to operate the Trust, and adopt by-laws, rules and regulations. No intent that the provisions of a collective bargaining agreement shall prevail over the terms of the Trust appears anywhere.

We have also gone over the provisions of the CFA—Retirement Income Plan and although there are references to collective bargaining agreements, the intent of the plan is that the Trust and Trustees shall control employee eligibility. At no point in the plan, or the Trust, is there any distinction among employees.

■ The plaintiffs have determined that "casual employees" are employees for

. . . .

---

**5.** A reading of the complaint indicates that this is an action based, in part, on ERISA and is not, as the defendant mistakenly contends, only a breach of contract action.

**6.** 29 U.S.C.A. § 1132(a)(3) reads:
A civil action may be brought—
(3) by a participant, beneficiary, or fiduciary (a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

**7.** 29 U.S.C.A. § 1145 reads:
Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

whom pension contributions must be made. Section 3.1 of the CFA—Retirement Income Plan concerns "Conditions of Eligibility." Section 3.1(A) defines "Member Employees" as "those Employees as defined as such under Section 1.1.HH hereof." Section 1.1.HH reads: "Member Employee. An Employee: 1. of a member Employer which has a current Collective Bargaining Agreement with a Union, which agreement requires Contributions to the Fund for such Employee." As noted in Finding of Fact 18, Section 3.1(B) further discusses eligibility:

Each Employee who is employed by a member Employer on the Effective Date of this Retirement Income Plan Benefit Level or each Employee who commences employment with a Member Employer after the Effective Date of this Retirement Income Plan Benefit Level shall be eligible [sic] to participate in this Retirement Income Plan Benefit Level after such Employee has performed one (1) Hour of Service as herein defined and is otherwise eligible to participate in accordance with the Collective Bargaining Agreement governing his employment. *Such Collective Bargaining Agreement, in order to meet the requirements of the Fund, shall:* (i) require no minimum period of Eligibility; and (ii) require no minimum age for either Participation or Vesting purposes; and (*iii*) *require the Member Employer to make appropriate Contributions to the Fund in accordance with the Contribution Rate Schedule attached hereto and the Rules and Regulations of the Fund governing Contributions.* (Emphasis supplied).

Thus, the collective bargaining agreement cannot set its own contribution terms, if it is to meet the requirements of the Pension Fund and a waiver cannot alter plaintiffs' duty or determinations.[8] Contributions according to the "86 Hour Rule" is one of the provisions to which the collective bargaining agreement must conform. Attached to the CFA—Retirement Income Plan is a "Schedule of Minimum Contributions Benefit Levels A Through J for January 1, 1987 and Thereafter." As noted in Finding of Fact 25, the section reads:

The Member employer is responsible to contribute the full monthly Contribution for each Member Employee if such Member Employee is credited with the number of Hours of Service during such month (not to exceed 86 Hours of Service) which the respective Collective Bargaining Agreement specifies as being the minimum number of Hours of Service which the Member Employee must be credited with during the month in order to require the member Employer to make a Contribution on behalf of the member Employee.

That "86 Hour Rule" is found in the defendant's collective bargaining agreement at Article XVIII. That was the only *section which the plaintiffs reviewed when the defendant submitted its collective bargaining agreement for inspection.* The plaintiffs explained their limited review as caused by the heavy number of employers using the Plan and by the huge number of documents involved. It is perfectly reasonable for plaintiffs, in the case at bar, to have confined their inspection to that part of the collective bargaining agreement which concerned pensions. That Article VI concerning "casual employees" escaped their notice is of no relevance because the casual employee exclusion is invalid. The administrative burden and costliness of administering a trust where there is no uniformity among the collective bargaining agreements have been recognized and perceived as a serious problem. *See Gainey,* 627 F.Supp. at 411. There is also danger that "if an employer ... could force its individualized labor contract on the Trustees, then such an employer would to some degree control Fund administration and, ultimately, control distribution of its assets...." *Id.*

8. According to Article VI of the Collective Bargaining Agreement, "casual employees" "shall sign" a standard Union Waiver Form of their rights. Any waiver, in order to be valid has to be both knowing and voluntary. Even if waivers were valid, we would have to question whether the element of voluntariness was present.

Were the Trustees to fail to collect these delinquent contributions, that would place an unfair burden on the Plan. "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Benson*, 907 F.2d at 314. The Trustees' determination of eligibility for these "casual employees" obviously does not violate the "arbitrary and capricious" standard to which such determinations are subject. On the contrary, it is fully reasonable, if not mandated, under the circumstances.

■ If an employee—no matter what his designation according to the defendant—meets the eligibility requirements imposed by the Trust Agreement and the CFA—Retirement Income Plan, then pension contributions are due. The employer who, like the defendant, wishes to create his own, individualized collective bargaining agreement has two choices: either abandon that objective and conform to the requirements of the Pension Plan to which it already belongs, or find another source of funding which will not object to handling non-uniform agreements.[9] If the defendant employer in the instant case still wishes to be a part of this Pension Plan, it must conform to the determination of eligibility made by the Trustees. It is of no relevance that the union in the instant case did not object to the exclusion of the "casual employees". "[O]pinions of union officials are not binding. The pension fund is an entirely separate entity from the union and the company. *Lewis, et al. v. Harcliff Coal Co.*, 237 F.Supp. 6, 7 (W.D.Pa.1965); *Gomez v. Lewis, et al.*, 292 F.Supp. 560, 561 (W.D.Pa.1968)." *Zaucha v. Polar Water Co.*, 444 F.Supp. 602, 606 (W.D.Pa. 1978).

■ Finally, we must address the issue of the relief requested by the plaintiffs. 29 U.S.C.A. § 1132(g)(2) (West 1985) reads:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

The total amount of unpaid contributions for the six "casual employees" listed is: $2,680.16. The plaintiffs shall be awarded this sum. The CFA—Retirement Income Plan also provides for interest. Section 15.1(A) provides that an employer who fails to make a contribution when due shall pay the following: "Interest on the Unpaid Contributions. For purposes of this Article, interest shall be computed at the rate charged by the Internal Revenue Service on delinquent accounts." We note that 26 U.S.C.A. § 6621 (West Supp.1991) specifies how that rate is computed. Liquidated damages are also provided for in the CFA—Retirement Income Plan. Section 15.1(B) provides that an employer who fails to make a contribution when due shall also pay:

A liquidated damage amount equal to the greater of:

---

9. This alternative was brought out in a colloquy by the Court with Mr. Kleinfelter. (Tr. 3/18/ 91, Kleinfelter at 53–55).

832

1. Interest on the unpaid Contribution (as determined next above); or

2. Damages in an amount equal to twenty percent (20%) (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court to be due as an unpaid Contribution; ...

The statute also requires the award of "reasonable attorney's fees" and costs of the action. The plaintiffs are directed to prepare a schedule, within fourteen days of the date of the Order appended to this decision, setting forth the exact dollar amounts to which it is entitled in addition to our award of unpaid contributions, under 29 U.S.C.A. § 1132(g)(2).

The plaintiffs also requested that the court issue a permanent injunction that would prevent the defendant from failing to make pension contributions for "casual employees" in the future. In *Washington Area Pension Fund v. Mergentime Corp.,* 743 F.Supp. 422 (D.Md.1990), the district court stated, with regard to the complaint's request for a permanent injunction:

> The court's discretionary authority to grant injunctive relief is well established under ERISA. *See* 29 U.S.C. § 1132(a)(3). Several courts have resorted to injunctive relief when it has been perceived as necessary to protect the rights of fund participants and beneficiaries. *See Laborer's Fringe Benefit Funds—Detroit and Vicinity v. Northwest Concrete and Construction, Inc.,* 640 F.2d 1350 (6th Cir.1981); *D.C. Paving Industry Trust v. Jones & Artis, Inc.,* 2 EBC 2227, 2233 (D.D.C.1981).

*Id.* at 428.

Having resolved the legal question of the defendant's obligation to make payments, we fully expect said defendant will make all future payments for such "casual employees" as they have in the past for their other employees. If this is not the case, plaintiffs may immediately seek to reopen this matter and we will grant such immediate relief as may be necessary.

CONCLUSIONS OF LAW

1. This court has jurisdiction in the instant case pursuant to the Employee Retirement Income Security Act, 29 U.S.C.A. §§ 1001 *et seq.* (West 1985 & Supp.1991), specifically, 29 U.S.C.A. § 1132(a) and 29 U.S.C.A. § 1145, and pursuant to the Labor Management Relations Act, 29 U.S.C.A. §§ 141 *et seq.* (West 1973 & Supp.1991), specifically, 29 U.S.C.A. § 185(a).

 2. In the instant case, the Trust Agreement and the CFA—Retirement Income Plan, not the collective bargaining agreement between the defendant and the union, control the determination of pension eligibility.

3. The defendant violated 29 U.S.C.A. § 1145 and is obligated to make pension contributions in the amount of $2,680.16 on behalf of the six "casual employees" named in this decision.

4. The plaintiffs are entitled to an award in conformity with 29 U.S.C.A. § 1132(g)(2).