522 F.2d 1091
 11 Fair Empl.Prac.Cas. 27, 10 Empl. Prac.
Dec. P 10,343
Isabell SLACK and Kathleen Hale et al., Plaintiffs-Appellees,
v.
Glenn C. HAVENS, Individually, and doing business as Havens
Industries, et al., Defendants-Appellants.
 No. 73-3037.
 United States Court of Appeals,
Ninth Circuit.
 July 28, 1975.
 
 Laurence L. Pillsbury (argued), San Diego, Cal., for defendants-appellants.
 Willard S. Anthony (argued), San Diego, Cal., for plaintiffs-appellees.
 Gerald Letwin, Dept. of Justice (argued), Washington, D. C., for amicus curiae.
 OPINION
 Before TUTTLE,* HUFSTEDLER and WALLACE, Circuit Judges.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Four black women brought an action against their former employers under Title VII of the Civil Rights Act of 1964, charging discriminatory discharge and seeking damages. They prevailed below, and the employers Glenn C. Havens ("Havens") and Havens International ("International") appeal. Havens and International contend that: (1) Havens was not an "employer" within the meaning of the Act because the period of the employment of these women and the number of his employees did not bring him within the purview of the Act; (2) their request for a jury trial was improperly denied; (3) International was not jointly liable because it was not a party to the antecedent EEOC proceeding, was not in existence when the discriminatory acts occurred, and had been dissolved before the complaint was filed; and (4) the evidence was insufficient to support the findings upon which the award was based.
 
 
 2
 Appellees Slack, Matthews, Hampton and Hale were employed in the bonding and coating department of Havens. On January 31, 1968, Matthews, Hampton and Slack were working with a white co-worker, Murphy. Their immediate supervisor, Pohasky, at that time informed them that they would be expected to undertake a general heavy cleaning of their department on the following morning. They protested. The next day, Pohasky excused Ms. Murphy to another assignment and called Hale back from another department where she had been on loan in order to have her join the cleaning. Appellees again protested that they had not been hired to do janitorial work, and inquired as to why Ms. Murphy had been excused. Pohasky insisted that they perform the work, remarking that "Colored people should stay in their places," and "Colored people are hired to clean because they clean better," or words to that effect. When appellees persisted in refusing to do the work, they were given their final paychecks. After pursuing state remedies, they filed charges with the Equal Employment Opportunity Commission (EEOC) and, upon receiving right to sue letters, brought this action seeking an injunction, back pay, and exemplary damages. The court denied injunctive relief because the only named defendant currently carrying on the business was Calgon Corporation, against whom the action had been dismissed with prejudice. Punitive damages were denied because they are not authorized by statute. The court awarded Matthews and Hampton six weeks pay because they had thereafter refused to consider reemployment until all four women were reinstated; no issue is raised on appeal concerning the propriety of the limited award to them. Slack and Hale were awarded damages for back pay from February 1, 1968 to January 17, 1972, reduced by the amounts they could have earned by reasonable diligence elsewhere, pursuant to 42 U.S.C. § 2000e-5(g).
 
 
 3
 Havens first argues that he is not an "employer" within the meaning of the Civil Rights Act[1] and that, consequently, the district court should have dismissed the action for lack of subject matter jurisdiction. According to his interpretation, the statute requires the existence of a "critical mass" of 50 employees for a total of 20 weeks during the prior calendar year and only those months of the current year preceding the incident at issue. Such a reading, he contends, is required to give employers notice of their potential liability under Title VII before a discriminatory incident occurs, and to prevent after-the-fact divestiture of jurisdiction by an employer's reduction of the size of his work force to fall outside the statutory limit.[2] These arguments are unpersuasive. Employers have had notice of the requirements of the Civil Rights Act since the time of its passage. Whether they could attempt to circumvent its provisions by manipulating the number of persons they employ is irrelevant to the problem of statutory construction facing us. The language of the statute is plain: Congress clearly spoke in terms of "calendar years." Although it would have been easy to incorporate appellants' "critical mass" idea by measuring the relevant number of employees over the 24 months preceding the incident, the statute gives no evidence of such an intent. We can therefore only conclude that Congress meant what it said and that Havens is indeed an "employer" within the terms of the statute. (See, e. g., Culpepper v. Reynolds Metals Co. (5th Cir. 1970) 421 F.2d 888, 891.)Appellants next argue that they were improperly denied a jury trial. They contend that awards of back pay in Title VII suits are in essence legal "damages" and should not be permitted absent the protections guaranteed by the Seventh Amendment. This claim is unsupported by either case law or the language of the statute. It is well established that a jury trial is required only if a statute creates legal rights and remedies enforceable in the ordinary courts of law (Curtis v. Loether (1974) 415 U.S. 189, 194, 94 S.Ct. 1005, 39 L.Ed.2d 260). In Curtis v. Loether, the Supreme Court held that the 1968 Civil Rights Act's Title VIII fair housing provisions did trigger this requirement, but it strongly suggested that the employment provisions found in Title VII do not. Contrasting the language of "damages" found in § 812 (42 U.S.C. § 3612) with that of "equitable relief" found in § 2000e-5(g),[3] and the mandatory nature of the § 812 award with the discretionary nature of the award of back pay under Title VII, the Court left little doubt that not all awards of monetary relief should necessarily be characterized as legal relief for purposes of the jury trial requirement. Appellants' claim that a jury trial must be afforded whenever any "legal" characteristic is associated with a primarily "equitable" action fails.[4] Here, the award of back pay is an integral part of the equitable remedy of reinstatement (See Albemarle Paper Co. v. Moody (1975) --- U.S. ---, ---, 95 S.Ct. 2362, 45 L.Ed.2d 280); to consider it apart from that context would be to distort the traditional line dividing legal from equitable remedies. We join the Fourth, Fifth and Sixth Circuits in holding that jury trials need not be provided defendants in Title VII suits. (See EEOC v. Detroit Edison (6th Cir. 1975) 515 F.2d 301, 308; Robinson v. Lorillard Corp. (4th Cir. 1971) 444 F.2d 791, 802, Cert. dismissed under rule 60, (1971) 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655; Johnson v. Georgia Highway Express, Inc. (5th Cir. 1969) 417 F.2d 1122, 1125; Cf. McFerren v. County Board of Education (6th Cir. 1972) 455 F.2d 199, 202-04; Harkless v. Sweeny Independent School District (5th Cir. 1970) 427 F.2d 319, 324, Cert. denied, (1971) 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439; Smith v. Hampton Training School (4th Cir. 1966) 360 F.2d 577, 581 n. 8 (en banc).)
 
 
 4
 Appellants also contend that International, incorporated after appellees' discharge, not mentioned in their complaint to the EEOC, and dissolved before this suit was commenced, was not properly joined in the district court proceedings and as a result cannot be held jointly liable for the judgment. We agree with the analysis of the successor corporation problem stated by the Sixth Circuit in EEOC v. MacMillan Bloedel Containers, Inc. (6th Cir. 1974) 503 F.2d 1086. When a successor corporation has not been named in antecedent charges filed with the EEOC, its liability to suit depends on
 
 
 5
 "1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product." (Id. at 1094.)
 
 
 6
 International substantially met all of these "sameness" inquiries. It seeks to avoid liability on the ground that it did not have notice of the EEOC proceedings. The absence of technical notice of the EEOC proceedings before suit was filed does not prevent liability. International had a full and fair opportunity to present all of its defenses to the district court, and it was not prejudiced in any way by a failure to give antecedent notice of the EEOC proceedings in which, at that time, it was disinterested. The district court properly held International jointly liable.
 
 
 7
 Appellants finally contend that the district court's finding of discrimination was clearly erroneous. We cannot agree. In a case such as this, the trier of fact must make the necessary determination based upon
 
 
 8
 "reasonable inferences drawn from the totality of facts, the conglomerate of activities, and the entire web of circumstances presented by the evidence on the record as a whole." (Aeronca Manufacturing Co. v. NLRB (9th Cir. 1967) 385 F.2d 724, 728.)
 
 
 9
 As mandated by Griggs v. Duke Power Co. (1971) 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, the court correctly looked beyond appellants' alleged lack of intent to discriminate and considered the consequences of the employment practices in question. Based on the evidence, we think that the district court reasonably found discrimination in the terms and conditions of employment applied to the appellees.
 
 
 10
 We have one minor problem with the amount of the back pay awards to Slack and Hale. The district court calculated their back pay for the entire period from February 1, 1968 to January 17, 1972. International was dissolved on October 29, 1971, and its assets were transferred to Calgon Corporation. As of October 29, 1971, International could not have employed Slack and Hale. Calgon may well have been liable as International's successor corporation, but that question is not before us. We remand the cause to the district court for the purpose of recalculating the back pay for Slack and Hale and limiting their awards to the period February 1, 1968 to October 29, 1971.
 
 
 11
 The cause is remanded for the purpose of correcting the amount of back pay awarded to Slack and Hale; in all other respects the judgment is affirmed. Appellees shall have their costs on appeal.
 
 
 
 *
 Honorable Elbert P. Tuttle, Senior Circuit Judge of the Fifth Circuit, sitting by designation
 
 
 [1]
 As defined in the version of 42 U.S.C. § 2000e(b) governing this case,
 The term "employer" means a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . . Provided, That . . . during the third year after (the effective date, 1965), persons having fewer than fifty employees (and their agents) shall not be considered employers . . . .
 Pub.L.No.88-352, Title VII, § 701, Act of July 2, 1964, 78 Stat. 253, as amended Pub.L.No.89-554, § 8(a), Act of September 6, 1966, 80 Stat. 662. The parties agreed below that the requisite number of employees for the relevant year (1968) was 50. Defendant Havens had 50 employees for at least 20 weeks during 1968; however, he had 50 or more employees for only 11 weeks during 1967 (the "preceding year") and for only 4 weeks in 1968 prior to the incident in question.
 
 
 [2]
 Appellants also argue that such a reading is inconsistent with the Act's requirements for filing complaints in federal court. Section 2000e-5(g) now requires the EEOC to make its determination on reasonable cause "as promptly as possible," and "so far as practicable" within 120 days. This 1972 amendment defined a time period for EEOC action where one had been absent from the original statute, effective at the time of the incident in question. Seemingly, a determination of reasonable cause would not be possible and would not be required until it were established that the putative "employer" actually came within the terms of the Act. Appellants' fears are therefore ill-founded
 
 
 [3]
 Although the case at bar arose before the introduction of the phrase "any other equitable relief as the court deems appropriate" in 1972, we have no doubt that Congress sought to broaden and clarify the power of the courts in enforcing the Act, not to engraft an equitable remedy onto an otherwise legal cause of action
 
 
 [4]
 Appellants' reliance on Beacon Theatres, Inc. v. Westover (1959) 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (holding that where legal and equitable counterclaims are being tried in a single proceeding, jury trial of legal issues should only under the "most imperative circumstances" be lost through prior adjudication of equitable claims) and on Dairy Queen, Inc. v. Wood (1962) 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (holding that the mere characterization of an essentially legal issue as "incidental" to equitable issues should not be used to deny jury trial) is misplaced. These cases involved a joinder of several claims, some legal, some equitable, and not a situation like the one presently before us in which a single cause of action must be characterized as itself legal or equitable