**Frank J. SOUZA, et al.,
Plaintiffs-Appellants,**

v.

**The TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST, Defendants-Appellees.**

**No. 79–4454.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1981.

Decided Dec. 14, 1981.

Rehearing and Rehearing En Banc Denied April 14, 1982.

R. J. Wolf, San Rafael, Cal., John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs-appellants.

Noble K. Gregory, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before ANDERSON and POOLE, Circuit Judges, and ENRIGHT,[*] District Judge.

ENRIGHT, District Judge:

### I. History of Case

This class action was filed in 1973 (certified in 1974) to obtain declaratory and injunctive relief against enforcement of an "age requirement" for the vesting of pension benefits under the Western Conference of Teamsters pension plan. The "plan" was an employee benefit trust fund jointly administered by employer and employee trustees, governed by section 302(c)(5) of the Labor Management Relations Act of 1947 (the "Act"). (29 U.S.C. § 186(c)(5)). The Teamsters plan provided that an employee's retirement benefit was vested if he had attained at least 15 years of unbroken service, 3,000 covered hours[1] with a covered employer *and* a minimum age. (The minimum age was 52 through 1968 and was reduced to 45 by the trustees thereafter).[2]

---

[*] Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

1. A "covered hour" is defined by the plan as an hour of employment with respect to which an employer has paid pension contributions to the trust fund.

2. Effective January 1, 1976, the age requirement was eliminated prospectively in conformity with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). In

This minimum age requirement was challenged as allegedly violative of Section 302(c)(5) of the Act. (29 U.S.C. § 186(c)(5)). The statute provides in part that the assets of such trust funds must be held for the "sole and exclusive benefit of the employees . . . ." Section 302(e) authorizes district courts "to restrain violations of this section." (29 U.S.C. § 186(e)).

The trial court denied defendants' motion for summary judgment in a thorough 1978 opinion, which also framed the issues for trial. *Souza v. Trustees of Western Conference of Teamsters Pension Trust*, 460 F.Supp. 843 (N.D.Cal.1978). The trial court then determined the case should be tried before the court rather than a jury. Trial was held and the court ruled for defendants, finding there was reasonable justification for the "age requirement" provision. We now invoke jurisdiction to review under 28 U.S.C. § 1291.

## II. Issues on Appeal

Appellants first contend that legal issues predominate in this action and therefore they should have been entitled to a jury trial. Second, they charge the findings of fact were contrary to the evidence and clearly erroneous.

## III. Appellants' Right to a Jury Trial

Appellants argue the trial court erred in denying them a jury trial. They list numerous questions of fact which were issues in this suit, such as whether or not there was reasonable justification for the exclusion of benefits, and describe them as legal issues. Appellants cite *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), for the proposition that where legal, statutory rights, as opposed to equitable rights alone, are in issue, a jury trial must be available. They also point to cases holding that when an action involves both legal and equitable claims, the right to jury trial remains. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d

44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

The Supreme Court's analysis in *Curtis v. Loether, supra*, is quite instructive on the jury issue. *Curtis* considered whether there was a jury right in cases brought under the 1968 Civil Rights Act's Title VIII fair housing provisions. The Supreme Court held that "when Congress provides for enforcement of statutory rights *in an ordinary civil action* in the district courts . . . a jury trial must be available *if the action involves rights and remedies of the sort typically enforced in an action at law.*" *Curtis, supra* at 195, 94 S.Ct. at 1009 (emphasis added). The Court goes on to stress that awards of actual and punitive damages, made specifically available by Title VIII (42 U.S.C. § 3612), are the traditional forms of relief offered in courts of law. It specifically contrasts Title VII of the Civil Rights Act, which includes the language "the court may enjoin the respondent from engaging in such unlawful employment practice . . . ." (42 U.S.C. § 2000e–5(g)). The Title VII section also authorizes monetary awards of back pay as a form of relief. (Similarly, an injunction in the present case would result in monetary relief to those who have been excluded under the age provision of the pension plan). However, the Supreme Court in *Curtis* notes that in Title VII actions the courts of appeal have characterized these awards as *integral parts of an equitable remedy. Id.* at 198, 94 S.Ct. at 1010. The Court states that the statutory language of Title VII "contrasts sharply with [Title VIII's] simple authorization of an action for actual and punitive damages." *Id.* at 198, 94 S.Ct. at 1010.

One year after *Curtis* was decided this court ruled that parties were not entitled to jury trials in Title VII actions. *Slack v. Havens*, 522 F.2d 1091 (9th Cir. 1975). Relying on *Curtis*, we held that "not all awards of monetary relief should necessarily be characterized as legal relief for pur-

*Wilson v. Board of Trustees, Etc.*, 564 F.2d 1299, 1302 (9th Cir. 1977), this court pointed

out that ERISA is expressly not retroactive.

poses of the jury trial requirement." *Slack, supra* at 1094. We also had the opportunity to consider and reject the argument that *Beacon Theatres* and *Dairy Queen* require a jury trial:

> These cases involved a joinder of several claims, some legal, some equitable, and not a situation like the one presently before us in which a single cause of action must be characterized as itself legal or equitable.

*Id.* at 1094, fn. 4.

The present case, like *Slack,* involves only a single cause of action which must be characterized as legal or equitable.

■ In characterizing this cause of action, it seems the rationale of *Curtis* and *Slack* would clearly support the finding of the lower court. The statutory language of Section 302 is much more directly analogous to that of Title VII. Section 302(e) authorizes district courts to "*restrain* violations of this section." (29 U.S.C. § 186(e)) (emphasis added). Appellants contend the legislative history shows the above quoted language was intended to remove bars to injunctive relief that had existed under the *Clayton* and *Norris-LaGuardia* Acts. This may be so, but nowhere is it shown that the section intended to provide anything *more* than injunctive relief. There is no mention of ordinary actions in the courts or awards of actual and/or punitive damages.

Appellants point out that actions brought under Sections 301 and 303 of the Act have been deemed to be entitled to be tried before juries. However, these are entirely different statutes with different jurisdictional provisions. Both are much more general and provide for ordinary suits in the courts. For example, both sections provide there shall be no "amount in controversy" requirement for suits brought under the respective sections. Section 303(b) (29 U.S.C. § 187(b)) specifically authorizes the recovery of *damages.* Section 301(b) (29 U.S.C. § 185(b)) speaks of money judgments. By way of contrast, Section 302 only mentions the district court's power "to restrain violations."

Other circuits interpreting Section 302(e) have consistently found its function as limiting jurisdiction to the grant of injunctive relief. *See, e. g., Snider v. All State Administrators, Inc.,* 481 F.2d 387 (5th Cir. 1973), *cert. denied,* 415 U.S. 957, 94 S.Ct. 1484, 39 L.Ed.2d 571 (1974).

Finally, the lower court in this case ruled that the class action should be certified under F.R.Civ.P. 23(b)(2), adopting appellants' own argument that the action primarily sought injunctive relief.

Thus, while there is no case directly on point, the language of the statute and the weight of authority in similar cases clearly indicate the district court was correct in striking plaintiffs' jury demand.

### IV. Findings and Judgment of the District Court

Section 302(c)(5) governs the establishment of employee pension funds. It provides that the pension fund must be "for the sole and exclusive benefit of the employees..." (29 U.S.C. § 186(c)(5)). This language has been interpreted to give federal courts jurisdiction to determine whether challenged provisions of a given pension fund constitute a "structural defect" in violation of this section.

This court has stated that alleged violations of the provisions of Section 302(c)(5) of the Act shall be judged by the following test: "A structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose behind their exclusion...." *Burroughs v. Board of Trustees of Pension Trust, Etc.,* 542 F.2d 1128, 1131 (9th Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). We have also repeatedly held trustees' decisions may not be overturned on the ground that they constitute a "structural defect" which violates Section 302 unless it can be demonstrated the provisions are clearly "arbitrary and capricious." *Ponce v. Const. Laborers Pension Trust,* 628 F.2d 537, 542 (9th Cir. 1980); *Tomlin v. Board of Trustees of Construction Laborers,* 586 F.2d 148, 149 (9th Cir. 1978); *Wilson v. Board of Trustees, Etc.,* 564 F.2d 1299, 1302

(9th Cir. 1977); *Toensing v. Brown*, 528 F.2d 69, 72 (9th Cir. 1975). Under this limited standard of review, "[c]ourts are extremely reluctant to substitute their judgments for the judgments of the trustees, and will do so only if the actions of the trustees are not grounded on any reasonable basis." *Ponce, supra* at 542. It is in this light which the court should determine whether, as appellants contend, the trial court's findings are contrary to the evidence and clearly erroneous.

Appellants challenge the court's Finding of Fact 7, which reads:

> 7. From 1968 to 1973, approximately 9,000 persons were denied benefits because of the age requirement. The Court does not, however, have sufficient reliable evidence to make any other findings regarding the number of persons excluded from the Plan solely because of the age requirement, or to determine whether this number constitutes a "sizeable" exclusion.

Appellants assert that as many as 27,000 employees may have been excluded solely because of the age requirement and that the court was duty bound to decide whether or not there was a sizeable exclusion. However, the record shows that there was widely conflicting testimony as to the number of exclusions and that the statistics and estimates used were suspect. Furthermore, a determination of this issue was unnecessary since the court found that even if the exclusion was sizeable "it was reasonably justified by the economic needs of the trust fund." [Conclusions of Law, para. 2]

Appellants further argue that contrary to Finding of Fact 6, the failure of the trustees to break voting deadlocks over the removal of the age requirement was illegal and unreasonable *per se*.[3] However, the record indicates only that there was a question in some peoples' minds that the trust provision limiting powers of an umpire may have been illegal. The subsection of the statute addressing voting deadlocks states:

> . . . in the event the employer and employee groups deadlock on the administration of such fund . . . the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree *within a reasonable length of time*, an impartial umpire to decide such dispute shall, *on petition of either group*, be appointed by the district court of the United States. . . . "

29 U.S.C. § 186(c)(5)(B) (emphasis added).

The testimony of union trustee Phillips shows the union trustees, who were proponents of elimination of the age requirement, deliberately avoided taking the issue to an umpire. This was done as a matter of strategy because these union trustees felt the decision of an umpire would be unfavorable. Thus, the evidence and findings indicate no prejudice; the trustees understood they had the power to seek arbitration and expand the powers of the umpire, but found it unnecessary and undesirable.

Appellants also challenge the trial court's finding (No. 8) that the trustees' failure to change the age requirement was in part based upon their attempt to maintain a 30 year amortization period at the advice of experts.[4] They cite portions of evidence where a 40 year period was mentioned as well as statements of certain trustees indicating confusion and lack of recollection as to the period of amortization. Yet appellants' brief only shows that a 40 year period was mentioned as a *possible* period and as the *maximum* period allowed by ERISA. There was also testimony from the principal actuary that 30 years was the recommended period; testimony from both

---

3. Under the trust agreement, employer trustees collectively had one vote and union trustees collectively had one vote; if there was a tie the measure would not pass. The trust provision stated that deadlocked questions could be taken before an umpire who could decide some, but not all, questions.

4. The amortization period of a pension is the number of years estimated to be necessary to amortize its unfunded liabilities. The length of increase in the amortization period is a technical actuarial measure of the cost of a liberalization in a pension plan.

employer and union trustees that a 30 year guideline was used; and testimony from a leading expert that a 30 year guideline is reasonable. If anything, the confusion in the testimony only underscores the fact that amortization guidelines are highly technical portions of a multi-faceted pension arrangement. This is precisely why courts should not second guess the good faith discretionary judgments of trustees. *Tomlin, supra* at 151.

Lastly, appellants' charge that Finding of Fact 9 is totally irrelevant to the lawsuit. Finding of Fact 9 states that there were also non-economic reasons for the trustees' refusal to eliminate the age requirement, including their preference for alternative liberalizations and the advice of their actuaries that their rules were already more liberal than most plans. Appellants correctly point out that an ultimate issue placed before the court was whether the additional financial burden of eliminating the age requirement justified the exclusion of potential recipients. It is true that, without more, this finding (No. 9) would not sustain a conclusion as to the reasonableness of the exclusion. The record, however, also shows that expert actuaries, upon whom the trustees were relying, advised that a liberalization of the vesting requirements would be financially unsound. These experts recommended against the elimination of the age requirements on financial grounds in addition to the fact that the plan was already more liberal than most. The first ground is, of course, highly relevant and nothing in the authorities cited by appellants indicate the second is irrelevant.

The findings of the trial court are reflected in the evidence and are not clearly erroneous.

## V. Conclusion

The judgment of the district court is AFFIRMED.