**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLAUDETTE LUTZ,
       *Plaintiff-Appellee,*

v.

GLENDALE UNION HIGH SCHOOL,
DISTRICT NO. 205; GOVERNING
BOARD OF GLENDALE UNION HIGH
SCHOOL, DISTRICT NO. 205,
       *Defendants-Appellants.*

No. 03-15745

D.C. No.
CV-98-01076-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted
December 6, 2004—San Francisco, California

Filed April 8, 2005

Before: Alex Kozinski, William A. Fletcher and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Kozinski

4075

## COUNSEL

Laurent R.G. Badoux, Littler Mendelson P.C., Phoenix, Arizona, for the appellants.

John W. Stewart, Gold Canyon, Arizona, for the appellee.

## OPINION

KOZINSKI, Circuit Judge:

We probe the mysteries of demanding a jury trial under Fed. R. Civ. P. 38(b).

## I

Lutz, a longtime teacher and assistant principal at schools in Glendale Union High School District, sued Glendale[1] in Arizona state court, claiming she was fired in violation of the Americans with Disabilities Act ("ADA"). Glendale removed the case to the United States District Court for the District of Arizona, where it successfully moved for summary judgment on the issue whether Lutz is substantially limited in a major life activity and therefore disabled. We reversed, finding a triable issue as to whether she is substantially limited in the major life activity of walking. *See Lutz* v. *Glendale Union High Sch., Dist. No. 205*, 8 Fed. Appx. 720, 721-22 (9th Cir. 2001) (mem.).

On remand, Lutz filed an amended complaint, raising new claims under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and under the Arizona Civil Rights Act, Ariz. Rev. Stat. §§ 41-1461 *et seq.* She also divided her ADA claim into separate claims that Glendale failed to provide reasonable

---

[1] "Glendale" refers to the school district and its governing board, both defendants in this case.

accommodations and that it fired her because she exercised her rights under the ADA. Over Glendale's objection, the district court tried all of Lutz's claims to a jury, which found for Lutz. Glendale appeals, arguing that the district court erred in submitting the case to a jury because Lutz had waived her right to a jury trial.

## II

**[1]** Because Glendale had not filed its answer before it removed the case, Lutz was entitled to demand a jury trial at any time until ten days after she was served with the answer. *See* Fed. R. Civ. P. 38(b); *Pac. Fisheries Corp.* v. *HIH Cas. & Gen. Ins., Ltd.*, 239 F.3d 1000, 1002 n.2 (9th Cir. 2001); *cf.* Fed. R. Civ. P. 81(c) (requiring a jury trial demand "within 10 days after service . . . of the notice of filing the [removal] petition" if "at the time of removal all necessary pleadings have been served"). Lutz did not demand a jury trial in federal court until she filed her amended complaint—about eleven months after Glendale filed its answer.

**[2]** Lutz's failure to make a timely jury trial request in federal court would ordinarily mean that she waived her right to trial by jury. *See* Fed. R. Civ. P. 38(d). However, Rule 81(c) provides two possible avenues around waiver in removal cases. First, Lutz would have been entitled to a federal jury trial had she made a proper jury request under *state* law before the case was removed. *See* Fed. R. Civ. P. 81(c) ("A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal."). Second, Lutz would not have had to request a jury trial after removal if her state complaint already contained a jury demand that would have satisfied Rule 38(b). *See Mondor* v. *United States Dist. Court*, 910 F.2d 585, 587 (9th Cir. 1990) ("[W]here a pre-removal jury demand would satisfy federal . . . requirements, that demand is incorporated into the federal record upon removal, and is deemed to satisfy

Rule 38(b)."); *see also* Fed. R. Civ. P. 81(c) ("Repleading [after removal] is not necessary unless the court so orders.").

**[3]** Lutz's complaint plainly fails to qualify for the former alternative. In Arizona, a jury trial demand "shall not be endorsed on or be combined with any [motion other than the motion to set the case for trial] or pleading filed with the court," Ariz. R. Civ. P. 38(b), and Lutz had not separately demanded trial by jury.

**[4]** Whether her original state complaint meets the requirements of Rule 38(b) is less clear. Her complaint did not explicitly demand that her case be tried to a jury. However, in her prayer for relief, she requested that the court "[e]nter a Judgment in favor of Plaintiff for such back pay and value of lost employment benefits as may be *found by a jury*" (emphasis added). She also requested compensatory damages for pain and suffering in "such amount as may be *awarded by a jury*" (emphasis added). We must decide whether these references to a jury in her state complaint would have been sufficient to invoke the right to a jury trial in federal court.[2]

Lutz's requests are hardly the ideal way to request a jury trial: They were made in passing and buried in the body of the complaint, where they could easily be overlooked by court staff, who must decipher pleadings to decide how to calendar a case. *See Whitman Elec. Inc.* v. *Local 363, Int'l Bhd. of Elec. Workers*, 398 F. Supp. 1218, 1223 (S.D.N.Y. 1974) ("A demand for jury trial should be indorsed on the pleading, rather than merely set forth in the body of the pleading, to give proper notice to the Clerk and the Court in preparing trial calendars."). Ideally, we would prefer that parties make jury trial demands "in a separate document or set off from the main body of the pleading in order to make [them] readily

---

[2]Fed. R. Civ. P. 38(b) provides in relevant part that a party "may demand a trial by jury of any issue triable of right by a jury by . . . serving upon the other parties a demand therefor in writing."

recognizable." Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice and Procedure* § 2318, at 135 (2d ed. 1994).

Nevertheless, we "indulge every reasonable presumption against waiver" of the jury trial right, *Aetna Ins. Co.* v. *Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937), and therefore accept jury demands that fall far short of the ideal. *See, e.g.*, *Gargiulo* v. *Delsole*, 769 F.2d 77, 78-79 (2d Cir. 1985) ("While defendants' demand, made on the last page of their answer, was not in the preferred style, and its obscure placement perhaps caused the clerk of the court to overlook it, we nonetheless conclude that it complied with Rule 38(b)."); *Pradier* v. *Elespuru*, 641 F.2d 808, 810-11 (9th Cir. 1981) (holding that, where the body of a pleading contains a jury trial demand, the pleading need not also state in its caption that a jury trial is requested in order to comply with Rule 38(b)—even if a district court rule requires such a statement). What we do insist on is that the jury demand be sufficiently clear to alert a careful reader that a jury trial is requested on an issue. This approach allows a great deal of flexibility in how the request is made, and so comports with our presumption against waiver, while still recognizing that the purpose of Rule 38's demand requirement is to "inform the Court and counsel well in advance of trial as to the trial method desired." *Gallagher* v. *Del. & H.R. Corp.*, 15 F.R.D. 1, 3 (M.D. Pa. 1953), *cited in Mondor*, 910 F.2d at 587.

[5] While Lutz's requests certainly could have been clearer, they did provide sufficient notice to the court and opposing counsel that she wanted a jury trial on two remedial issues: back pay,[3] and damages for pain and suffering. We therefore hold that her requests were sufficient to "demand a trial by jury" on these issues.

---

[3]*But see* pages 4087-91 *infra* (holding that this issue is not "triable of right by a jury").

However, the district court submitted the entire case to the jury, including the question of liability. Yet, nowhere in her state complaint does Lutz ask for a jury trial on liability; her only references to a jury are in the prayer for relief. Thus, we must consider whether Lutz's jury references as to damages were enough to invoke a jury trial right as to the entire case.

**[6]** Rule 38 provides that a party may "demand a trial by jury *of any issue* triable of right by a jury." Fed. R. Civ. P. 38(b) (emphasis added). But it does not require that a party itemize every issue it wants presented to a jury. Instead, "[i]n the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable." Fed. R. Civ. P. 38(c). A party seeking a jury trial thus has a choice: either list specific issues for the jury to consider, or make a general demand, which will be deemed to cover all issues triable to a jury. As the word "otherwise" indicates, though, a jury demand will be deemed to cover all issues only if it doesn't specify particular issues. *Cf.* 5 James Wm. Moore, *Moore's Federal Practice* ¶ 38.40, at 38-381 (2d ed. 1996) ("Pursuant to Rule 38(c) the demand may be general, as: 'plaintiff demands trial by jury in this action.' Or the demand may specify the issues, as: 'defendant [demands] trial by jury of the issues raised by the defendant's counterclaim and plaintiff's reply thereto.' "); *United States* v. *Anderson*, 584 F.2d 369, 371 (10th Cir. 1978). Any other construction would render the first clause of Rule 38(c) a nullity. Lutz did specify particular issues: She requested that a jury determine back pay and certain compensatory damages. As a result, we cannot deem her requests "to have demanded trial by jury for all of the issues . . . triable" to a jury pursuant to Rule 38(c).

**[7]** While we do not lightly conclude that the right to a jury trial has been waived, we are mindful that the purpose of a jury demand is to inform the court and opposing counsel that certain issues will be tried to a jury. Because Lutz's complaint asked for a jury on some issues but not others, a careful reader

would not reasonably conclude that Lutz wanted a jury on all issues presented in the complaint. We hold that Lutz's state complaint did not contain a jury demand on liability that would have satisfied federal standards. The district court thus erred in submitting the question of liability to the jury.**[4]**

## III

**[8]** Lutz did include a general jury trial demand in her amended complaint, which was filed almost a year after Glendale's answer. *See* pages 4079-80 *supra*. The district court apparently believed that the filing "start[ed] again the time to ask for a jury," but it was mistaken. Rule 38 cut off Lutz's right to demand a jury trial ten days after Glendale's answer was served, *see* Fed. R. Civ. P. 38(b), and the amended complaint did not revive that right as to the issues that Lutz had raised in her original complaint, *see* Fed. R. Civ. P. 38(d) ("The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury."); *see also W. Geophysical Co. of Am.* v. *Bolt Assocs., Inc.*, 440 F.2d 765, 769 (2d Cir. 1971) ("The authorities are clear that when a party has waived the right to a [jury] trial with respect to the original complaint and answer by failing to make a timely demand, amendments of the pleadings that do not change the issues do not revive this right." (citations omitted)).

---

**[4]**Lutz also argues that, notwithstanding her failure to make a timely jury demand, the district court "in its discretion upon motion may order a trial by a jury of any or all issues." Fed. R. Civ. P. 39(b). We find nothing in the record to indicate that the district court exercised its discretion in allowing an untimely jury request; instead, the district judge apparently believed Lutz's request was timely. *See* page 4084 *infra*. In any event, had the district judge ordered a jury trial under Rule 39(b), he would have abused his discretion. *See Pac. Fisheries*, 239 F.3d at 1002 ("An untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown."). Lutz points to no explanation other than inadvertence for her failure to make a timely jury trial request as to liability.

**[9]** Nevertheless, in her amended complaint, Lutz raised new claims under section 504 of the Rehabilitation Act and under the Arizona Civil Rights Act, and she divided her ADA claim into two distinct claims. *See* pages 4079-80 *supra*. If these additional claims were new "issue[s]" under Rule 38(b), then Lutz's jury trial demand on liability was timely as to them. *See* Fed. R. Civ. P. 38(b) (requiring that the jury demand on an issue be made "not later than 10 days after the service of the last pleading directed to such issue"); *see also Williams* v. *Farmers & Merchants Ins. Co.*, 457 F.2d 37, 38 (8th Cir. 1972) ("Once waived, the [jury trial] right is revived by amendments to the pleadings only if new issues are raised in such amendments.").

**[10]** Our caselaw is clear, though, that "the presentation of a new *theory* does not constitute the presentation of a new *issue* on which a jury trial should be granted [as of right] under . . . Rule 38(b)." *Trixler Brokerage Co.* v. *Ralston Purina Co.*, 505 F.2d 1045, 1050 (9th Cir. 1974). Rather, Rule 38(b) is concerned with issues of *fact*. *See Las Vegas Sun, Inc.* v. *Summa Corp.*, 610 F.2d 614, 620 (9th Cir. 1979). And there is no significant difference in the facts necessary to support Lutz's original ADA claim and those supporting her new claims.[5] Lutz noted in her motion to file the amended complaint that the Rehabilitation Act claim "is the same basic claim as the ADA claim already alleged and predicated upon the same set of facts," and that her claim under the Arizona Civil Rights Act, which "parallels very closely the ADA," "operates upon the same set of facts as the underlying ADA claim." Lutz also informed the court that she divided her ADA claims solely "to make it clear that [she was] seeking relief for . . . retaliatory action in addition to her claim for

---

[5]Indeed, the factual allegations in Lutz's state complaint and her amended federal complaint are virtually identical. The only real difference, as Lutz herself acknowledged, is that the amended complaint "set[s] out in greater detail the major life activities that are severely limited" by her disability.

[Glendale]'s failure to provide her a reasonable accommodation," but that her allegation that Glendale fired her in retaliation "had been contained in the original complaint."

**[11]** Because it is clear that "the issues in the original complaint and the amended complaint turn on the same matrix of facts," *Las Vegas Sun*, 610 F.2d at 620, Lutz's failure to request a jury trial on liability for her original ADA claim means that she could not later request that a jury determine liability for the new legal theories raised in her amended complaint.

## IV

**[12]** Because the liability portion of this case was tried to a jury despite Lutz's waiver of her jury trial right on that issue, we must vacate the verdict and remand for the district court to determine liability, either after a new trial on that issue or, in its discretion, on the record of the first trial. If, on remand, the district court decides the liability issues in Glendale's favor, then that will end the case. But if the district court decides liability for Lutz, it will be necessary to decide what effect, if any, to give to the jury's determination of the appropriate remedy.

**1.** Lutz properly requested a jury on the amount of her pain and suffering damages—an issue as to which she is entitled to a jury trial, *see* 42 U.S.C. § 1981a(c)(1)—and the jury actually determined that amount. If the district court finds for Lutz on liability, it need not empanel a second jury to determine pain and suffering damages; it may accept the first jury's verdict as to the appropriate measure of damages.[6]

---

[6]This approach is consistent with the Seventh Amendment's admonition that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. There would be no constitutional difficulty if the district court were to submit the issue of damages to a new jury; indeed, the

**2.** Lutz also requested that a jury determine the appropriate amount of back pay, but Glendale argues that, under the ADA, back pay is a matter for resolution by the court, not an issue triable of right by a jury. The Seventh Amendment jury trial right extends only to "Suits at common law," which refers to "suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] [recognized], and equitable remedies [are] administered." *Chauffeurs Local No. 391* v. *Terry*, 494 U.S. 558, 564 (1990) (quoting *Parsons* v. *Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830) (emphasis added)) (internal quotation marks omitted) (third alteration added); *see also Ross* v. *Bernhard*, 396 U.S. 531, 538 (1970) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."). The question, then, is whether back pay under the ADA is a legal or an equitable remedy.

**[13]** The ADA expressly incorporates the remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, 2000e-9. *See id.* § 12,117(a). Title VII, in turn, authorizes the district court to "order such affirmative action as may be appropriate, which may include . . . reinstatement . . . , with or without back pay . . . , or any other equitable relief as the court deems appropriate." *Id.* § 2000e-5(g)(1). The reference to "*other*

---

common law rule was that, "[i]f the verdict was erroneous with respect to any issue, a new trial was directed as to all." *Gasoline Prods. Co.* v. *Champlin Ref. Co.*, 283 U.S. 494, 497 (1931). Nor is there any bar to letting the existing damages verdict stand after a new finding of liability, because the issues of liability and damages in this case are sufficiently distinct that the issue of liability can be tried separately without injustice. *See id.* at 499 ("[W]here the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does not compel a new trial of that issue even though another and separable issue must be tried again."); *see also Dazenko* v. *James Hunter Mach. Co.*, 393 F.2d 287, 291 & n.7 (7th Cir. 1968).

equitable relief," *id.* (emphasis added), would make sense only if the relief previously described—reinstatement, which may be awarded with or without back pay—is itself equitable. *See Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 218 n.4 (2002). Consistent with this language, we have held that "the award of back pay is an integral part of the equitable remedy of reinstatement," and must therefore be tried to the court. *Slack* v. *Havens*, 522 F.2d 1091, 1094 (9th Cir. 1975); *see also Johnson* v. *Ga. Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969) ("The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion, and not by a jury.").[7]

---

[7]Other courts of appeals have reached the same result by emphasizing that back pay is purely discretionary and thus equitable. *See, e.g.*, *Crocker* v. *Piedmont Aviation, Inc.*, 49 F.3d 735, 748 (D.C. Cir. 1995) ("[T]he characterization of Title VII backpay awards as equitable is bolstered by the fact that judges formally retain some degree of equitable discretion in deciding whether to award back pay in individual cases once violations are proven, even though the Court has severely constrained the exercise of this discretion." (citations omitted)); *see also Curtis* v. *Loether*, 415 U.S. 189, 197 (1974) ("In Title VII cases, . . . the courts have relied on the fact that the decision whether to award backpay is committed to the discretion of the trial judge."); *Albemarle Paper Co.* v. *Moody*, 422 U.S. 405, 443 (1975) (Rehnquist, J., concurring) ("To the extent . . . that the District Court retains substantial discretion as to whether or not to award backpay notwithstanding a finding of unlawful discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial."). And still others have suggested that back pay is equitable because it is restitutionary. *See, e.g.*, *Robinson* v. *Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir. 1971) ("The back pay award is not punitive in nature, but equitable—intended to restore the recipients to their rightful economic status absent the effects of the unlawful discrimination."); *see also Curtis*, 415 U.S. at 196-97 & n.13 ("In Title VII cases the courts of appeals have characterized backpay as an integral part of an equitable remedy, a form of restitution."). *But cf. Great-West Life & Annuity Ins. Co.*, 534 U.S. at 218 n.4 (noting that neither *Curtis* nor *Terry*, 494 U.S. at 572, says that "*since* [back pay] is restitutionary, it is *therefore* equitable").

**[14]** Following *Slack*, we would hold that Lutz's request for back pay, which she included along with her demand for reinstatement, sought an equitable remedy, but we must first decide whether *Slack* is still good law. When we decided *Slack*, "Title VII afforded only 'equitable' remedies." *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 252 (1994). Congress subsequently adopted the Civil Rights Act of 1991, which expanded the remedies available under Title VII. An employee may now recover "compensatory and punitive damages" for certain Title VII violations, 42 U.S.C. § 1981a(a)(2), and he is entitled to have a jury determine the amount of such awards, *id.* § 1981a(c)(1).

**[15]** However, Congress provided that the compensatory and punitive damages remedies it created were "in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e-5(g). *Id.* § 1981a(a)(2); *see also Landgraf*, 511 U.S. at 253 ("[T]he new compensatory damages provision of the 1991 Act is 'in addition to,' and does not replace or duplicate, the backpay remedy allowed under prior law."). Thus, Congress did not alter the remedial scheme it had established for back pay. *See* 42 U.S.C. § 2000e-5(g). In fact, Congress *excluded* back pay from the types of damages for which it authorized a jury trial. *See id.* § 1981a(b)(2) ("Compensatory damages awarded under this section shall not include backpay . . . ."); *id.* § 1981a(c)(1) (granting a jury trial right where "a complaining party seeks compensatory or punitive damages under this section"). In light of the nearly uniform view of the courts of appeals that back pay under Title VII must be tried to the court,[8]

---

[8]Although the Supreme Court had declined to address this issue, *see Lorillard* v. *Pons*, 434 U.S. 575, 583-84 (1978); *but cf. Albemarle Paper Co.*, 422 U.S. at 416 (referring to the district court's discretion to award back pay as "equitable in nature"), the courts of appeals had consistently held that back pay is an equitable remedy, for which there is no right to trial by jury. *See Curtis*, 415 U.S. at 196-97 & n.13 (collecting cases); *Baker* v. *City of Detroit*, 458 F. Supp. 379, 381 (E.D. Mich. 1978) ("In actions brought for back pay and injunctive relief under Title VII of the Civil Rights Act of 1964, the courts of appeals have uniformly held that no right to trial by jury attaches." (citation omitted)); *id.* at 382; *see also* note 7 *supra* and accompanying text.

it is particularly telling that Congress provided a jury trial right for some Title VII claims while expressly declining to do so for back pay. *Cf. Faragher* v. *City of Boca Raton*, 524 U.S. 775, 792 (1998) ("[T]he force of precedent . . . is enhanced by Congress's amendment to the liability provisions of Title VII [after the Supreme Court interpreted those provisions], without providing any modification of our holding."); *Cannon* v. *Univ. of Chi.*, 441 U.S. 677, 696-98 & n.21 (1979) (presuming that Congress was aware of the prior interpretation given to a statutory provision by four courts of appeals and a handful of district courts when it adopted that language in a different statute).[9]

**[16]** Accordingly, we hold that there is no right to have a jury determine the appropriate amount of back pay under Title VII, and thus the ADA, even after the Civil Rights Act of 1991. Instead, back pay remains an equitable remedy to be awarded by the district court in its discretion. *See Albemarle Paper Co.* v. *Moody*, 422 U.S. 405, 415-16 (1975).

**[17]** Lutz also requested back pay under the Rehabilitation Act and the Arizona Civil Rights Act. Because the Rehabilitation Act, like the ADA, incorporates Title VII's back pay remedy, *see* 29 U.S.C. § 794a(a)(1) (incorporating 42 U.S.C. § 2000e-5(g)), Lutz is not entitled to a jury trial on her back

---

[9]That Congress did not alter the nature of Title VII back pay awards in 1991 is further borne out by our recent cases' repeated references to such awards as equitable. *See Caudle* v. *Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) ("Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies to employees . . . . The relevant remedies include . . . awards of back pay . . . . An award of back pay is appropriate to advance Congress' intent to make persons whole for injuries suffered through past discrimination." (quoting *Loeffler* v. *Frank*, 486 U.S. 549, 558 (1988) (quoting *Albemarle Paper Co.*, 422 U.S. at 421)) (citation and internal quotation marks omitted)); *see also, e.g.*, *Amantea-Cabrera* v. *Potter*, 279 F.3d 746, 749 (9th Cir. 2002) (referring to an "equitable award of back pay and lost benefits"); *EEOC* v. *Dinuba Med. Clinic*, 222 F.3d 580, 584 (9th Cir. 2000) ("[T]he district court granted equitable relief to Marquez, in the form of back pay . . . .").

pay claim under that act. And since Title VII caselaw is persuasive in interpreting the Arizona Civil Rights Act, we do not interpret Arizona law as entitling Lutz to a jury trial on her state law request for back pay. *See* Ariz. Rev. Stat. § 41-1481(G) (remedies for employment discrimination "may include . . . reinstatement or hiring of employees with or without back pay . . . or any other equitable relief as the court deems appropriate."); *Higdon* v. *Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909 n.3 (Ariz. 1983) ("The Arizona Civil Rights Act is modeled after and generally identical to [Title VII]. Accordingly, we find federal Title VII case law persuasive in the interpretation of our Civil Rights Act."); *cf. Timmons* v. *City of Tucson*, 830 P.2d 871, 875 (Ariz. Ct. App. 1991) ("Both [Title VII and the Arizona Civil Rights Act] provide for the recovery of back pay, a remedy that has been held to be equitable in nature." (citing *Albemarle Paper Co.*)).

If the district court holds for Lutz on the question of liability, it therefore cannot reinstate the jury's verdict as to the appropriate amount of back pay under any of the three acts Lutz claims Glendale violated. Rather, the district court must exercise its discretion to determine an appropriate amount of back pay, if any. *See Albemarle Paper Co.*, 422 U.S. at 415-22.

## V

Glendale raises a number of other issues on appeal, some of which we need not address in light of our decision to remand the case for a bench trial on liability. It argues that the district court erred by declining to enter judgment in its favor because of alleged inconsistencies between the jury's general verdict on liability and its answers to interrogatories, *see* Fed. R. Civ. P. 49, or in refusing to order a new trial because of those alleged inconsistencies, *see* Fed. R. Civ. P. 59, but each of these arguments depends on the jury verdict that we now vacate. We likewise do not address Glendale's argument that

the district court erred in denying its motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50.

Three of Glendale's arguments, however, concern issues that might arise in case of a retrial, or if the district court decides to base its findings on the record of the first trial. We therefore address these arguments here.

**1.** First, Glendale argues that the district court improperly allowed Lutz to testify that Glendale had fired her in violation of its disciplinary policies, even though a state court had previously determined that Glendale had complied with its internal rules. The district court recognized that Glendale's disciplinary policies had already been the subject of litigation in state court, and it sustained Glendale's objection to the testimony on that basis. However, the district court did not instruct the jury to disregard the testimony. Because we are setting aside the jury verdict on other grounds, we need not consider whether the absence of an instruction was prejudicial. On remand, the district court shall not permit Lutz to testify about alleged violations of Glendale's disciplinary policies in the event of a retrial, or shall disregard her previous testimony on that score if it decides the case on the existing record.

**2.** Glendale also argues that the district court improperly limited the number of witnesses it could call and the number of days it had to present evidence, which it claims "unfairly allowed Lutz to monopolize the time spent in front of the jury." The district court decided that these limitations were appropriate to avoid cumulative evidence. The district judge noted, for instance, that it would be cumulative "to hear from everyone who was at all of these [events]," or to "have an inordinate number of people testifying about the same thing." And, when he limited the time Glendale had available to present its case, he explained that it could "present evidence that is not cumulative of what we've already heard," but that "to just simply go back and [ask previous witnesses] how they

felt or how they were impacted about something is simply cumulative."

[18] District courts have "broad authority to impose reasonable time limits" during trial to "prevent . . . needless presentation of cumulative evidence." *Navellier* v. *Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (quoting *Amarel* v. *Connell*, 102 F.3d 1494, 1513 (9th Cir. 1997) (quoting *Monotype Corp.* v. *Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (quoting *Johnson* v. *Ashby*, 808 F.2d 676, 678 (8th Cir. 1987)))) (internal quotation marks omitted). Likewise, the district court has broad authority to limit the number of witnesses on a particular point to avoid cumulative evidence. *See Loux* v. *United States*, 389 F.2d 911, 917 (9th Cir. 1968) ("As a practical matter, the court needs the right to impose some limitation on the number of witnesses testifying about a particular fact. Decision as to how many must be left to the sound discretion of the judge."); *cf.* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of . . . needless presentation of cumulative evidence."). The district court did not abuse its broad discretion in limiting either the number of witnesses Glendale could call to testify as to particular issues or the time it had to present its case.

[19] **3.** Finally, Glendale contends that the district court should have sanctioned Lutz for discovery violations. Lutz did not produce recordings of various meetings between Lutz and school officials until two weeks after the discovery deadline had passed. However, the district court noted that transcripts and tapes of the recordings had been produced well in advance of trial, and that, in light of the late disclosures, Glendale was given an extension of time to complete its discovery. The district court therefore did not abuse its discretion in declining to impose sanctions. *See Adriana Int'l Corp.* v. *Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990).[10]

---

[10]Glendale nonetheless contends that it did not receive one particular tape until the second day of trial. The record does not appear to support

**[20]** Lutz also did not provide expert witness reports to Glendale until about a month and a half before trial. Glendale argues that these reports were untimely under Fed. R. Civ. P. 26(a)(2)(C) because they were disclosed less than 90 days before trial.[11] But the 90-day rule applies only "[i]n the absence of other directions from the court." *Id.* If the court speaks to the issue, expert witness reports must be disclosed "at the times and in the sequence" it directs. *Id.* The district court carefully managed the schedule for discovery and determined that Lutz's expert reports were timely; we find no abuse of discretion.

\*      \*      \*

Because Lutz did not make a timely request for a jury trial on liability, she waived her right to have a jury determine that issue. *See* Fed. R. Civ. P. 38(d). The district court thus erred in submitting the issue of liability to a jury. We vacate the jury's verdict and remand for further proceedings in conformity with our opinion.

**REVERSED AND REMANDED.**

---

this claim, but, even if it were true, Glendale has not explained how it was prejudiced so greatly by this single discovery violation that the district court abused its discretion in declining to impose sanctions.

[11]Glendale also argues that Lutz should have been sanctioned because the expert reports she submitted did not contain background information. *See* Fed. R. Civ. P. 26(a)(2)(B). Because Glendale did not raise this argument below, we decline to consider it. *See Alaska Airlines, Inc.* v. *United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991).